

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

*pa 163*

JOHN L. HILL
ATTORNEY GENERAL

December 3, 1973

The Honorable Robert S. Calvert
Comptroller of Public Accounts
State Finance Building
Austin, Texas

Opinion No. H- 172

Re: Problems relating to
Article 1.045, V. T. C. S.,
Taxation-General, pro-
viding a limitation period
for gas production tax
liability as affected by
orders of the Federal

Dear Mr. Calvert:

Power Commission

Your opinion request requires an interpretation of several provisions
of Article 1.045, V. T. C. S. - Taxation-General.

The State of Texas imposes a tax on gas production which is based
on a percentage of gross receipts or income. Articles 3.01, et seq., V.T.C.S,
Taxation-General; Humble Oil and Refining Company v. Calvert, 478 S. W.
2d 926 (Tex. 1972).

The Federal Power Commission (hereinafter called the F.P.C.) regu-
lates the rates charged for interstate gas pipeline purchases and sales under
the Federal Natural Gas Act. 15 USC § 717, et seq. The rates fixed by the
FPC directly affect the amount of the production tax due to the State of Texas.
The relevant procedures of the FPC are described in your letter as follows:

> "The problem arises in connection with additional
> gas production tax, or refunds of overpayment of tax
> brought about through orders of the Federal Power
> Commission.
>
> "As you know, the Federal Power Commission,
> under certain conditions, allows the seller of gas being
> sold in interstate commerce to collect increased rate

provided for in his gas sales contract, subject to
final review.   In most instances, the final order of
the Federal Power Commission requires that the
seller of gas refund to the purchaser some part of
the suspended rate.   This office requires that the
gas production tax be paid on the total amount due
the producer, including the increased rate. "

Since the state tax is currently paid on the basis of the temporary
rate, the final action of the FPC, if it lowers the rate, also lowers the
tax and entitles the taxpayer to a credit or refund (See Attorney General
Opinion No. WW-477,1958) or if the FPC raises the rate, this results in
a tax deficiency and further liability on the part of the taxpayer.

Article 1.045 establishes limitations for assessing and collecting
such deficiencies and for claiming and receiving such a refund.   Its
pertinent provisions appear in § (F).   Subsection (l) of (F) provides:

"Notwithstanding any provision of any other
Article of this Title, when any administrative pro-
ceeding before any local, state or federal regulatory
agency or judicial proceeding arising therefrom,
results in a final determination which affects the
amount of tax liability imposed by any Article of this
Title, such final determination shall be reported to
the Comptroller within sixty (60) days after becoming
final, with a statement of the reasons for the difference
in tax liability, in such detail as the Comptroller may
require. " (emphasis added)

Subsection (2) provides that if from such report or from investigation
it appears that the tax liability has not been fully assessed, the Comptroller
has one year after the receipt of the report or one year from the discovery of
such final determination, if unreported, whichever shall first occur, to assess
the deficiency.   Subsection (4) provides that no action may be commenced in
court to collect any deficiencies after one year from the date the Comptroller
receives the report or discovers such final determination.   Subsection (3)
provides that if a report or investigation discloses an overpayment, then the

Comptroller shall issue a refund or credit for such overpayment within the aforementioned one year period after receiving such report or discovering such final determination.

Your first question concerns the meaning of "final determination" as used in the statute. You ask, "When is the determination of the Federal Power Commission final? Is it at the time that the Federal Power Commission issues its order as to the acceptable price per MCF for the gas, or is it at the time the Federal Power Commission, the taxpayer and the purchaser agree to the amounts to be refunded?"

The term "final determination" is used in the statute with reference to administrative proceedings as well as jucidial proceedings, and we assume the Legislature is using the phrase as synonymous with "final order," which in turn represents the same type of order on an administrative level that a final judgment represents in district court. See, Texas State Board of Dental Examiners v. Blankfield, 433 S.W. 2d 179 (Tex. Civ. App., Houston, [14th Dist.] 1968, writ ref'd n.r.e.) where the two types of orders are likened. The final order or determination must be one which leaves nothing in dispute. Sun Oil Co. v. Railroad Commission, 311 S.W. 2d 235 (Tex. 1958); Payne v. Texas Water Quality Board, 483 S.W. 2d 63 (Tex. Civ. App., Dallas, 1972, no writ); Allen v. Crane, 257 S.W. 2d 357 (Tex. Civ. App., San Antonio, 1953, writ ref'd n.r.e.).

We believe the final order or final determination of the FPC, as referred to in Article 1.045, occurs when the amount of refund has been agreed to by the parties and approved by the Commission, or, in the absence of agreement, has been ordered by the Commission. Our opinion has a practical as well as a legal basis.

The practical basis is that it is not until the exact amount of the refund or deficiency is known that the taxpayer can make the report contemplated by the statute, because such report requires exact information.

The legal basis is the accepted definition of the final judgment or order which is:

> "For a judgment to be final it must determine the rights and dispose of all the issues involved so that no future action by the court will be necessary in order to settle and determine the entire controversy." County of Harris v. Black, 448 S. W. 2d 859 (Tex. Civ. App., Houston, 1969, no writ).

Although the FPC order establishing a rate goes a long way toward disposing of all the issues, there still remains the accounting problem of applying the rates to the amounts paid pending the Commission determination, and it is this accounting which directly bears on the re-assessment of your production tax.

Your second question refers to the provision in § (F)(1) of Article 1.045 that the taxpayer must report "in such detail as the Comptroller may require." You ask:

> "Does this mean that within sixty (60) days after the final determination of the Federal Power Commission, the taxpayer must file corrected reports in detail showing the amount of tax overpaid or underpaid, or is a letter of notofication without amount detail sufficient?"

We believe that the statute clearly delegates to your office the authority to answer these questions on the basis of your own judgment, limited only by reason. You may require that the report contain such detail as you deem necessary to assist you in determining the effect of the FPC order on the taxpayer's liability. Therefore, if "a letter of notification without amount detail" is not sufficient for your purposes, you should and may require more.

Your third question arises from the several provisions in the statute to the effect that, in the absence of a report by the taxpayer, the one-year limitation begins when the Comptroller "discovers" the FPC final determination. You ask, then comment as to the problem involved:

> "If no report is filed with the Comptroller within sixty (60) days, when does the Comptroller discover such final determination? Is it when he reads about it

> in the newspaper, through reading the Federal Power
> Commission releases, during the course of an audit
> of the taxpayer's records, or when the taxpayer may
> have possible filed corrected reports reflecting the
> overpayment or deficiency, even though after sixty
> (60) days from final determination?  The answer to
> this question becomes very important, first because
> in some instances it takes a long period of time for the
> taxpayer to compile the figures necessary for filing the
> corrected reports with this office and for this office to
> verify corrected reports.  If not reported and no cor-
> rected reports are filed within the one (1) year period,
> I have no way of knowing which taxpayers may be due
> to pay additional taxes to the State and which ones are
> entitled to a refund or credit until an audit has been
> made of each of the affected taxpayer's accounts, which
> would be impossible to accomplish within the one (1)
> year period. "

This statutory concept of "discovery by the Comptroller" is not a clear one, and we have found no helpful authorities interpreting similar provisions.  In fact, so far as we know, there are no similar provisions. We believe the legislature intended these provisions to apply primarily for the benefit of the Comptroller so that your office will not be dependent upon taxpayers filing reports to enable you to act on known final determinations of the FPC.  However, the one year period for paying a refund also begins running "after receiving such report or discovering such final determina- tion, " § (F)(3).  So the concept also applies to refunds.

The statute cures your concern about the one year limitation running before you can audit the taxpayer's corrected amount.  The statutory time runs from the date of the taxpayer's report or the date of the Comptroller's discovery "whichever shall first occur. "  Although this quoted language ap- pears only in Subsection (2), we believe that it is implied in Subsections (3) and (4).

The exact meaning of the "discovery by the Comptroller" as used in the statute is difficult to determine, and again  this is a proper subject for

rules and regulations. For your guidance in promulgating such rules and regulations we can advise you that we do not believe that the Legislature intended to establish constructive notice in any form or to require the Comptroller's office to monitor FPC rulings. Nor do we believe that the Legislature intended to charge your office with notice that may come to employees without direct responsibility. Likewise, the statute should not be read so as to put your office in a position that it has too little or no time to audit a claim for refund or deficiency. Your objective is to obtain a report and to correctly compute the tax, and basically it is the taxpayers' burden to bring about your "discovery."

## SUMMARY

1. The reference to "final determination" in Article 1.045, V.T.C.S., Taxation-General, refers to the time the FPC, the tapayer and the purchaser agree to a refund or, in the absence of an agrement, a refund has been ordered by the FPC.

2. The amount of detail of the reports required to be filed by a taxpayer showing changes in liability resulting from a FPC final determination is a matter within the Comptroller's authority to require.

3. The time of "discovery by the Comptroller," used in several provisions of Article 1.045, V.T.C.S., Taxation-General, is a proper subject for rules and regulations by the Comptroller promulgated to accomplish the basic objective of obtaining accurate reports and correctly computing the final tax.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee