**BROWNING–FERRIS, INC., et al., Appellants,**

v.

**BRAZORIA COUNTY, Texas, et al., Appellees.**

No. 3–86–132–CV.

Court of Appeals of Texas, Austin.

Sept. 23, 1987.

Rehearing Denied Jan. 6, 1988.

Louis S. Zimmerman, Fulbright & Jaworski, Austin, for Browning–Ferris, Inc.

Jim Mattox, Atty. Gen., Ginny Agnew, Asst. Atty. Gen., Austin, for Texas Water Comn.

Mary E. Kelly, Henry & Kelly, Elbert Hooper, Hooper, Robinson & Moeller, Austin, for appellees.

Before POWERS, GAMMAGE and CARROLL, JJ.

POWERS, Justice.

Brazoria County sued in district court for judicial review of an order issued by the Texas Water Commission in a contested

case.[1] As we construe the judgment below, the district court held the order did not constitute a final decision by the Commission and dismissed the cause for want of subject-matter jurisdiction.[2] We will affirm the judgment in part and vacate it in part.

## THE CONTROVERSY

Browning–Ferris, Inc. applied to the Commission for a permit to construct and operate in Brazoria County a hazardous-waste disposal well and certain related surface facilities. Tex.Rev.Civ.Stat.Ann. art. 4477–7 (1976 & Supp.1987); Tex.Water Code Ann., chs. 26 & 27 (Pamp.Supp.1987). Brazoria County appeared in the agency proceeding in opposition to the application. Following a contested-case hearing, the Commission entered an order directing issuance of the permit. Brazoria County sued for judicial review of the order in a district court of Travis County, as it was privileged to do under the provisions of art. 4477–7, *supra,* § 9, the suit being governed by the terms of the Texas Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 19 (Supp.1987).[3] As mentioned above, the district court dismissed the cause for

1. The original petition in the cause designated two plaintiffs: Brazoria County, Texas and "Citizens in Protest of Browning-Ferris Waste Disposal Well." The latter plaintiff was described in the petition as "a non-profit, unincorporated citizens group opposed to the hazardous waste disposal well proposed by Browning–Ferris, Inc. to be located in Brazoria County." Both plaintiffs are appellees in this Court. Appellants are the Texas Water Commission and Browning–Ferris, Inc.

2. There are anomalies in the district-court judgment. In it, the district court recites that the order in dispute "is not a full and final order and," moreover, certain findings of fact recited therein are "inadequate" to support the order and one finding of ultimate fact contained therein. In the decretal portion of the judgment, the court orders "that this cause be dismissed and be remanded to the Texas Water Commission ... for further proceedings as necessary, in accordance with this Court's letter opinion of May 2, 1986," attached to the judgment. In the attached letter, the court referred again to its finding that the order in dispute "is not a full and final order," citing as a ground that the Commission did not determine the "form of financial assurance" to be supplied by Browning–Ferris. This refers to the type or kind of security to be given by an applicant for a permit such as that requested by Browning–Ferris, as discussed in the text.

The first anomaly referred to is, of course, the district court's concurrent dismissal of the cause and its order remanding the cause to the Commission. Having held that the Commission's order was not a final decision subject to judicial review, the proper disposition was rather a dismissal of the cause for want of jurisdiction. *See generally Manor Indep. School Dist. v. Leachelle N.,* 647 S.W.2d 770 (Tex.App.1983, no writ); *Allen v. Crane,* 257 S.W.2d 357 (Tex.Civ.App.1953, writ ref'd n.r.e.). The second anomaly is the purported adjudication of the merits of the suit with respect to the agency fact findings.

To give meaning and effect to all parts of the judgment on appeal to this Court, we interpret the judgment to mean that the cause was dismissed for want of subject-matter jurisdiction under the Texas Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat. Ann. art. 6252–13a, § 19(a), (b) (Supp.1987), limiting suits for judicial review of agency orders to those taken from *"final* decision[s]" in contested cases where an aggrieved party has filed suit "within 30 days after the decision complained of is *final* and appealable." (emphasis added). Such dismissal by the district court necessarily leaves the controversy pending in the agency and the order of remand and the court's purported rulings on the merits are unnecessary surplusage.

3. Article 4477–7, § 9 provides as follows:

(a) A person affected by any ruling, order, decision, or other act of the ... commission may appeal by filing a petition in a district court of Travis County.... Except as provided in Section 9(c), in an appeal from an action of the ... commission ... the issue is whether the action is invalid, arbitrary or unreasonable.

\*　　\*　　\*　　\*　　\*　　\*

In authorizing a cause of action to be brought by an affected person, to review *"any* ruling, order, decision, or other *act* of the ... Commission," the Legislature has provided for judicial review of the Commission's acts in terms that are about as all-encompassing as they possibly can be. Literally interpreted, the statute *would* permit an affected person to sue for judicial review of even the non-final orders issued by the Commission in a contested case, the corollary being, of course, that the statute thus purports to confer upon the district courts of Travis County the statutory jurisdiction to hear and determine such suits. The statute may *not* be interpreted literally in this manner. Rather, it must be interpreted in light of the judicial doctrines of "ripeness," *Sun Oil Company v. Railroad Commission,* 158 Tex. 292, 311 S.W.2d 235, 236 (1958), and "exhaustion," *Sproles Motor Freight Line v. Smith,* 130 S.W.2d 1087, 1088 (Tex.Civ.App.1939, writ ref'd), in which the

want of jurisdiction, based on the court's determination that the disputed order did not constitute a "final decision" as required by APTRA § 19(a), (b).

Browning–Ferris and the Commission (appellants) contend, among other points of error, that the district court erred in holding that the order in dispute did not constitute a final decision by the Commission. This holding rests on the fact that the agency order leaves undetermined and uncertain the kind or type of financial "assurance" that will be required of Browning–Ferris to secure its obligation to plug the well and close its surface facilities on discontinuance of the hazardous-waste disposal operations authorized in the permit.[4] If the district court is correct in its holding, we of course have no jurisdiction to determine any of appellants' points of error that challenge the district-court judgment on other, non-jurisdictional grounds. We should observe, however, that the district-court determinations relative to those other grounds are meaningless if that court was

correct in its holding that it lacked subject-matter jurisdiction in the absence of a "final decision" by the Commission.

Appellants base their argument on certain terms set forth in the Commission's order and in the permit, as we have quoted those terms in footnote 4. Basically, these terms set the amounts of any "bond" required of Browning–Ferris to secure its obligations pertaining to the well and related facilities, but they contemporaneously leave it to the future election of Browning–Ferris to supply some *other* type or kind of security provided the alternative is acceptable to the Commission. (The Commission is the successor to the Texas Department of Water Resources to which the terms of the order literally refer.) Appellants argue that this right of election and the unspecified nature of any alternative form of security Browning–Ferris might give do not deprive the Commission's decision of the "finality" required by APTRA § 19(a), (b) because there are no statutory or regulatory requirements that the type or kind of

court limited similarly all-encompassing language ("any decision, rate, charge, rule, order, act, or regulation") to mean those *final* determinations of an agency that have a concrete, adverse, and immediate effect. *See also P.U.C. of Texas v. Pedernales Elec. Co-Op.,* 678 S.W.2d 214, 219 n. 2 (Tex.App.1984, writ ref'd n.r.e.), applying the same limiting interpretation to a statute providing that "[a]ny party to *a proceeding* before the Commission is entitled to judicial review...." (emphasis added). Viewed in another way, art. 4477–7, § 19 should be construed in harmony with the "final decision" requirement of APTRA § 19(a), (b), the two being in *pari materia. See Hooks v. Texas Dept. of Water Resources,* 611 S.W.2d 417, 419 (Tex. 1981) ("The judicial review provisions of the APA and the Water Code should be read in conjunction and harmony with each other.").

4. The dispute about the finality of the Commission's order centers around the following passages in the agency order and in the permit: The order recites as follows in Finding of Fact No. 37:

The applicant has made a satisfactory showing of financial responsibility....
a. The permit requires and the applicant acknowledges that it will maintain a bond or other form of financial security in force at all times in the amount of $103,000.00 to provide for the plugging of the well upon abandonment.
b. In accordance with the *Solid Waste Act* and the *Rules of the Texas Department of Water Resources,* the permit also requires and

the applicant acknowledges that it will maintain a bond or other financial security in an amount not less than $214,000.00 to assure closure of the surface facilities.
In Paragraph XII of the permit states:
C. The permittee shall secure and maintain in full force and effect at all times a performance bond or other form of financial security, in a form acceptable to the Executive Director of the TDWR, to provide for proper plugging and abandonment of the permitted waste disposal well. The bond or other form of financial security may, at the discretion of the Texas Water Commission, be altered at a future date to provide for adequate plugging subject to prevailing general economic conditions. This permit does not authorize underground injection of fluids unless the permittee has in effect a performance bond or other form of financial security acceptable to the Executive Director in the above amount.
Paragraph XV contains the following:
D. Closure:
1. Permittee shall secure and maintain in force at all times a bond or other financial security for closure and post closure [sic] in a form acceptable to the Executive Director of the TDWR which, at a minimum, meets the financial requirements of 31 Texas Administrative Code (TAC) Section 335.452, and in an amount not less than $214,000 to assure facility closure in accordance with the solid waste authorization portion of this permit.

security be fixed in a permit or order intended to terminate a contested-case proceeding looking to issuance of a hazardous-waste disposal permit. In addition, appellants argue that the record of agency proceedings contains "substantial evidence" of Browning–Ferris' intent and ability to provide adequate security for its obligation to plug the well and close the associated facilities.

Brazoria County rejoins that the pertinent statutes and regulations *do* require that the type or kind of financial assurance be determined and fixed (along with the amount) *before* any permit is issued. The County appears to argue as well that allowing the Commission to approve a kind or type of security other than the "bond" specified in the order amounts to inserting in the permit and order a "condition" to the official authority given therein to Browning–Ferris. The resulting uncertainty as to any alternative form of security that Browning–Ferris might elect to give, with the Commission's acquiescence, will affect an important interest of the County. It is, consequently, a matter upon which the County is entitled to be heard before a final decision is made. Since the matter is expressly left open by the terms of the disputed order, therefore, it cannot constitute the "final decision" that APTRA § 19(a), (b) requires in any suit for judicial review governed by APTRA, even though the Commission intended it to be a "final decision" terminating the contested-case proceeding initiated by Browning–Ferris.

The foregoing summarizes the parties' basic contentions in their briefs to this Court, wherein they cite various case authorities for their arguments concerning the "finality" attribute of agency orders as it bears on any suit for judicial review governed by APTRA § 19(a), (b). We shall analyze these decisions generally before attempting to apply their rules and principles in the present appeal.

## THE "FINALITY" ATTRIBUTE OF AGENCY ORDERS FOR PURPOSES OF JUDICIAL REVIEW

In APTRA § 19, the Legislature qualified as follows any suits for judicial review governed by APTRA:

(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a *final decision* in a contested case is entitled to judicial review under this Act. This section is cumulative of other means of redress provided by statute.

(b) Proceedings for review are instituted by filing a petition within 30 days after the decision complained of is *final and appealable*....

(emphasis supplied). The effect of these provisions is to confine *statutorily authorized* suits for judicial review to the "final decisions" reached by administrative agencies in the "contested cases" to which APTRA applies. *See* APTRA §§ 3(2), 13–18; *P.U.C. of Texas v. Pedernales Elec. Co-op.*, 678 S.W.2d 214, 219 (Tex.App.1984, writ ref'd n.r.e.). The limitation in APTRA § 19(a), (b) does not, of course, apply to suits based upon an *inherent* right to resort to the district court for protection against agency action that is ultra vires or unconstitutional, nor does it apply to the resulting invocation of the district court's *inherent, equitable or constitutionally granted* jurisdiction. *Glen Oaks Utilities, Inc. v. City of Houston*, 161 Tex. 417, 340 S.W.2d 783 (1960); *Westheimer Independent School District v. Brockette*, 567 S.W.2d 780 (Tex.1978); *Pedernales Elec. Co-op., supra*, at 219–20. The present appeal involves, however, a "contested case" to which APTRA does apply and the district court's jurisdiction derives from art. 4477-7, § 9 and not the court's inherent, equitable or constitutionally granted power to protect against agency action that is ultra vires or unconstitutional.

Several other provisions of APTRA pertain to the "final decisions" reached by administrative agencies in contested cases conducted under that statute. A "proposal for decision" practice may be required under APTRA § 15 before a "final decision" is made; and, APTRA § 16 provides as follows:

(a) A final decision or order adverse to a party in a contested case must be in writing or stated in the record.

(b) A final decision must include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, must be accompanied by a concise and explicit statement of the underlying facts supporting the findings....

(c) A decision is final, in the absence of a timely motion for rehearing, on the expiration of the period for filing a motion for rehearing, and is final and appealable on the date of rendition of the order overruling the motion for rehearing, or on the date the motion is overruled by operation of law....

(d) The final decision or order must be rendered within 60 days after the date the hearing is finally closed....

(e) Except as provided in Subsection (c) of this section [dealing with final decisions in emergencies], a motion for rehearing is a prerequisite to an appeal. A motion for rehearing must be filed within 15 days after the date of rendition of a final decision or order....

From these statutory provisions, we turn to the judicial decisions wherein the final-decision requirement has been considered and applied.

The limitation of judicial review to the final decisions of administrative agencies is not only a statutory or legislative policy. It is a judicial policy as well. Before the enactment of APTRA in 1976, the judicial doctrines of "ripeness" and "exhaustion of administrative remedies" were employed to effectuate the same purposes that are now served by APTRA § 19(a), (b). *Pedernales Elec. Co-op., supra,* at 220 n. 3. We shall discuss these judicial doctrines below, for the enactment of APTRA § 19(a), (b) augments their vitality and effectuates the same purposes.

As indicated in the foregoing paragraphs, our concern with the finality attribute of an agency order is directed at the issue of whether the order constitutes a "final decision" *for purposes of judicial review* under some statute that confers upon a district court the power of judicial review, as art. 4477–7, § 9 does in the present case. In this regard, we find sev-

eral decisions that contain statements more or less like the following passage found in *Walker Creek Homeowners Ass'n v. Tex. Dept. of H. Res.,* 581 S.W.2d 196, 198 (Tex. Civ.App.1979, no writ):

An administrative order must leave nothing open to dispute in order to be a final order.... "So long as matters remain open, unfinished or inconclusive, there is no final decision." ...

(citations omitted). Statements such as these do not enlighten. They do not constitute judicial incantations under which all "finality" problems spontaneously and mystically resolve themselves with perfect clarity at the mere utterance of the quoted phrases. They are only generalizations or summations. They must be understood in the *context of the particular case* while bearing in mind that there are *any number* of "finality" problems to which the statements might refer. They do not even constitute a universal rule under which an agency decision is deprived of finality if *anything at all* remains "open, unfinished or inconclusive...." For example, some statutes administered by some agencies expressly authorize them to impose *conditions* in the permits they issue, as art. 4477–7, § 4(e)(2) does in the present case, and these conditions may even require the approval of other agencies before the permit becomes effective. *See Lipsey v. Texas Dept. of Health,* 727 S.W.2d 61, 66–67 (Tex.App.1987, writ pending); Annot., 49 ALR3rd 492, 493 (1973). The contingencies represented by such conditions may or may not occur and the matters pertaining to them necessarily remain "open" and "unfinished." This does not, however, *necessarily* prevent the order from being final for purposes of judicial review. The only general rule properly inferrable from the reported decisions is this: there is no single rule dispositive of all "finality" problems.

We believe the reported Texas decisions fall into the following general categories insofar as they deal or purport to deal with the finality attribute of agency orders for purposes of judicial review:

■ 1. *The judicial doctrines of "ripeness" and "exhaustion of adminis-*

trative remedies" may deprive an agency decision of finality, for judicial review purposes, even though it was intended to be final for agency purposes. Either of these judicially created doctrines may dictate that a court should decline to review an agency decision on the theory that it is not "final." The "ripeness" doctrine focuses on the conservation of judicial resources and time—they should be expended only for controversies that are real and present as opposed to those that are merely abstract, hypothetical, or remote. Davis, Administrative Law Text, § 21.01 (3d ed. 1972). Whether the "ripeness" doctrine is applicable depends upon two factors: (1) the fitness of the issues for judicial decision; and (2) the hardship occasioned to a party by the court's denying judicial review. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

■ The judicial doctrine requiring the "exhaustion of administrative remedies," on the other hand, focuses not upon the judicial function but upon the administrative function committed by the Legislature to the agency and whether that function is complete. Davis, *supra.* The "exhaustion" doctrine requires that a court refrain from premature interruption of the administrative process where there remain unresolved issues that *only* the agency may determine. *Texas State Board of Examiners in Optometry v. Carp,* 162 Tex. 1, 343 S.W.2d 242 (1961). The purposes and the exceptions to the "exhaustion" doctrine are discussed in *P.U.C. of Texas v. Pedernales Elec. Co-op., supra,* at 219–20.

Texas judicial decisions have applied both the "ripeness" and "exhaustion" doctrines in determining whether an agency order, intended by the agency to be final for its purposes, was a final decision for purposes of judicial review.[5] The "ripeness" doctrine is illustrated in *Sun Oil Company v. Railroad Commission of Texas,* 158 Tex. 292, 311 S.W.2d 235 (1958). Sun Oil purchased tubular steel outside Texas and transported the steel into the State by contract carrier. The company stored the steel at Texas locations from which it was moved to drilling sites as required. In consequence, the company benefitted from interstate shipping rates that were lower than intrastate rates. The Texas Railroad Commission initiated an agency proceeding directed at this practice by Sun Oil and other shippers, none of whom were made parties to the proceeding. Concluding the proceeding, the Commission issued an order that such shipments fell within its jurisdiction so as to be subject to the higher intrastate rates. Sun Oil and the other shippers were expressly made subject to the terms of the order, even though they had not been parties to the proceeding terminated thereby. Sun Oil filed in the Commission certain exceptions to the order. When these exceptions were overruled, Sun Oil sued for judicial review under a statute that authorized suits against the Commission by any "party at interest" who was "dissatisfied" with any order or decision of the agency. The Supreme Court held the order was not a final order susceptible of judicial review. In so holding the Court noted that the order was "quite 'final' so far as the particular proceeding goes ... and no further proceedings will necessarily follow." *Sun Oil, supra,* 311 S.W.2d at 237. Nevertheless, the only consequence of the Commission's order was to give Sun Oil and the other shippers "good reason to believe that they *will* be proceeded against, if they continue to follow the same ship-

---

5. Federal decisions applying the "ripeness" and "exhaustion" doctrines sometimes emphasize one or the other from case to case. *See, e.g., Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) (finality concerned with whether the initial decision maker has reached a definitive position upon the issue that inflicts an actual concrete injury); *Bell v. New Jersey,* 461 U.S. 773, 103 S.Ct. 2187, 76 L.Ed.2d 312 (1983) (focus of finality is whether judicial review at the time invoked will disrupt the administrative process); *Marine Terminal v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970) (relevant considerations in determining finality are whether the process of administrative decisionmaking has reached a stage where judicial review will not disrupt orderly process of agency adjudication *and* whether rights or obligations have been determined or legal consequences will result from agency action).

ping system." *Id.* (emphasis added). Citing *United States v. Los Angeles & S.L.R. Co.*, 273 U.S. 299, 47 S.Ct. 413, 71 L.Ed. 651 (1927) and *Federal Power Commission v. Hope Natural Gas Co.*, 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1943), the Court stated that "finality" required not only an order intended to terminate the particular proceeding but one that occasioned some concrete, imminent, and adverse consequence to the complainant seeking judicial review. *Sun Oil, supra,* 311 S.W.2d at 237–38.

In *Big Three Industries, Inc. v. Railroad Com'n,* 618 S.W.2d 543 (Tex.1981), another "ripeness" case, the Supreme Court dealt with the "finality" issue in connection with an order that conformed generally with the final-order format required by APTRA § 16. The order contained, however, an express provision that the relief awarded therein—permission for a seller of natural gas to charge higher prices to its customers in order to recover the seller's own increased costs for the gas—should "begin" at the time a final order was "entered" in another contested case pending in the agency. The Court held the agency order became final, "by its own terms," on the same date as the final order in the other contested case. *Id.* at 548. The holding evidently rests on the judicial doctrine of ripeness. We infer as much because the disputed order, by its own terms, did not require the complaining party to pay the higher prices until the future date mentioned therein—a classic want of the concrete, adverse, and immediate effect that ripeness requires. In addition, the Court, in justifying its holding, referred obliquely to the ripeness doctrine in stating that the "[p]arties must be able to determine with reasonable certainty when an administrative proceeding becomes *ripe* for judicial review." *Id.* at 548. But the disputed order *did* become final with the occurrence of the contingency stated therein; that is, it *acquired* the necessary concrete, adverse, and immediate effect that ripeness requires, so as to become subject to judicial review, when theorder was entered in the other contested case. Other decisions have applied the

"ripeness" doctrine in terms of the "finality" requirement. *See, e.g., Moody v. Texas Water Commission,* 373 S.W.2d 793 (Tex. Civ.App.1963, writ ref'd) and *Logan v. Armstrong,* 694 S.W.2d 68 (Tex.App.1985, no writ).

Any number of Texas judicial decisions have dealt with the "finality" question in terms of the "exhaustion" doctrine, both before and after APTRA. *See, e.g., City of Corpus Christi v. Public Utility Com'n,* 572 S.W.2d 290 (Tex.1978); *L.A. Norris Truck Line v. Railroad Commission,* 245 S.W.2d 746 (Tex.Civ.App.1952, writ ref'd); *Arnold v. City of Sherman,* 244 S.W.2d 880 (Tex.Civ.App.1951, writ ref'd). In lieu of any further discussion of this judicial doctrine, we refer to our opinion in *P.U.C. of Texas v. Pedernales Elec. Co-op., supra.*

■ 2. *The attribute of finality may be precluded by the terms of the agency order, indicating that it was to be only an interim order pending a final decision.* This distinction was made by the Supreme Court in its decision in *Big Three Industries, Inc. v. Railroad Commission,* 618 S.W.2d 543, 546–47 (Tex.1981). There, the Court referred to three of its own decisions involving agency orders that were, by their very terms, made effective only until such time as the agency reached a final decision and issued an order that embodied that decision and terminated the agency proceeding: *City of Corpus Christi v. Public Utility Commission,* 572 S.W.2d 290 (Tex.1978); *City of Corpus Christi v. Public Utility Commission,* 569 S.W.2d 494 (Tex.1978); and, *Lower Colorado River Authority v. Coastal States Gas Producing Company,* 551 S.W.2d 340 (Tex. 1977). The same theory was applied to the orders under judicial review in *City of Houston v. Turner,* 355 S.W.2d 263 (Tex. Civ.App.1962, no writ) (order stated that suspension of officer would become effective automatically *if* disciplinary action against him became necessary within one year); *Payne v. Texas Water Quality Board,* 483 S.W.2d 63 (Tex.Civ.App.1972, no writ) (order stated that "final" approval *depended* upon approval "by appropriate State agency"); *Railroad Commission v.*

*Air Products & Chemicals,* 594 S.W.2d 219 (Tex.Civ.App.1980, writ ref'd n.r.e.) (order stated that relief awarded therein would *become effective* at time a "final order" was entered in another agency proceeding, which had not been entered at the time suit for judicial review filed); *Texas General Indemnity Co. v. Strait,* 673 S.W. 2d 334 (Tex.App.1984, writ ref'd n.r.e.) (order of Industrial Accident Board interim order on its face where it ordered payment of benefits *until* occurrence of any of specified events, and did not purport to make final award); and, *People Against a Contaminated Environment v. Texas Air Control Board,* 725 S.W.2d 810 (Tex.App. 1987, writ ref'd n.r.e.) (order was an interim order on its face where it provided that applicant was authorized to *reopen* same proceeding within 180 days to adduce evidence).

■ 3. *The attribute of finality may be precluded for reasons based upon a motion-for-rehearing practice in the agency.* As mentioned previously, APTRA § 16(e) makes a motion for rehearing in the agency a "prerequisite" for judicial review in a contested case.

In one way or another, numerous judicial decisions nominally determine the availability of judicial review in terms of "finality" when, actually, they do so in terms of and by way of enforcing the motion-for-rehearing "prerequisite" of APTRA § 16(e) or some other aspect of a motion-for-rehearing practice, both before and after APTRA. These decisions are: *Sproles Motor Freight Lines v. Smith,* 130 S.W.2d 1087 (Tex.Civ.App.1939, writ ref'd) (agency order not final where it had been set aside by granting motion for rehearing); *Railroad Commission v. Brazos River Gas Co.,* 594 S.W.2d 216 (Tex.Civ.App.1980, writ ref'd n.r.e.) (motion for rehearing granted in part deprived entire order of "finality"); *Manor Ind. School Dist. v. Leachelle,* 647 S.W.2d 770 (Tex.Civ.App.1983, no writ) (order not final where motion for rehearing had been filed but not acted on by agency when suit for judicial review filed); *Southern Union Gas Co. v. Railroad Com'n,* 690 S.W.2d 946 (Tex.App.1985, no writ) (agency order

governed by APTRA not final until motion for rehearing filed and determined or overruled by operation of law, or no such motion is filed within time allowed by APTRA § 16(e)); *Consumers Water, Inc. v. Public Utility Com'n,* 707 S.W.2d 129 (Tex.App. 1986, writ ref'd n.r.e.) (motion for rehearing prerequisite for judicial review under APTRA § 16(e)); *El Paso Electric Co. v. Public Utility Com'n,* 715 S.W.2d 734 (Tex.App.1986, writ ref'd n.r.e.) (until agency acts on motion for rehearing or it is overruled by operation of law, there is no "final order" for court to review).

■ 4. *The attribute of finality may be precluded because the complaining party was deprived of a hearing before the agency decision was made.* In APTRA § 13(d), the Legislature provided as follows with respect to the conduct of contested cases under APTRA: "Opportunity must be afforded all parties to respond and present argument on all issues involved." Quite apart from such a statutory right, there may exist in the circumstances of a particular case a *constitutional* or due process right to be heard before an agency makes a final decision. Schwartz, Administrative Law §§ 5.1, 5.2 (1984). Whatever the source of the right to be heard in the administrative-agency context, it is qualified and enforceable in a variety of ways that need not be considered at length here. *See generally* Schwartz, *supra,* ch. 5. For present purposes, it will suffice to discuss two of our own decisions where the issue of a right to be heard was the controlling issue in determining whether the agency order was a "final" order susceptible of judicial review at the time a suit was brought for that purpose. Both decisions presented the question of finality in reference to an agency order that was expressly made dependent upon a future or contingent event.

In our decision in *Walker Creek Homeowners Ass'n v. Texas Department of H. Resources, supra,* the agency had ordered the issuance of a permit for a solid-waste disposal facility. The authority granted in the permit was made to depend upon several conditions set forth therein. The permit

holder was required to: (1) close and plug existing water wells in conformance with agency regulations, test the closed wells to assure conformance with such rules, and submit a plugging report to the agency within 60 days of the permit; (2) provide the agency an engineer's certificate that a soils test had been performed at the site and that lining had been provided where necessary; (3) close the site in accordance with agency regulations before abandoning it or completing disposal operations; and, (4) submit to the agency and obtain its approval of a site-access plan indicating that the holder of the permit has the "capability" to construct and maintain, in conformance with agency regulations, an all-weather access road from the disposal facility to a public road. On appeal, the party opposing the permit did *not* contend that the first three conditions deprived of finality, but it did contend that the fourth condition had that effect. This Court agreed, stating that the agency's approval of the site-access plan deprived the order of finality because the permit holder's "ability to construct and maintain a satisfactory access road [was] a matter which is still open to question." *Walker Creek, supra,* at 198. In dicta, the court distinguished this fourth condition from the preceding three by stating that the latter were "merely self-reporting requirement[s]" that did "not involve any discretion on the part of the agency," which might therefore "act to cancel or revoke the permit" if the holder failed to meet them.[6] In contrast, however, the access plan contemplated in the fourth condition involved "such considerations as beautification of the roadway, reduction of traffic hazards, or the [permit holder's] financial ability to maintain the road," in consequence of which the agency's approval of that plan was a process in which the opposing party "has a great interest and right to participate." On this reasoning, the court held the order in dis-

pute was not a final order subject to judicial review. *Walker Creek, supra,* at 198.

Implicit in the court's reasoning is this theory: the access road to and from the disposal site affected the opposing party in ways and in circumstances where *only* a pre-approval, evidentiary hearing in the agency would suffice to give that party an adequate opportunity to protect its interests before they were affected adversely by actions taken under authority of the permit. The court's holding that the order in dispute was not a final order was simply the corollary of this determination. This need not be the result in the case of every "condition" imposed in an agency order, as the next case makes clear.

In *Browning–Ferris, Inc. v. Johnson,* 644 S.W.2d 123 (Tex.App.1982, writ ref'd n.r.e.), the court again considered an order, issued under authority of art. 4477–7, *supra,* in termination of a contested-case proceeding conducted thereunder. The authority given in a permit issued by the agency, pursuant to its order, was made subject to the following condition:

> Not later than sixty days after the date of this permit, and prior to any excavation on site for waste disposal purposes, the permittee shall submit to the department revised landfill completion plan conforming to the above limitation and depicting the final contours of the entire landfill. . . .

*Browning–Ferris, supra,* at 125 n. 4. The court held that this condition did not deprive the agency order of the finality required for judicial review by the terms of APTRA § 19(a), (b). The court reasoned as follows: (1) the effect of the condition was merely to require a *revision* of the landfill-completion plan previously submitted by the permit holder so that the legally effective plan would be one in conformance with agency regulations *and the elevation finally settled upon by the Commissioners, in the contested-case proceeding, as the elevation to be required* of the permit

---

**6.** The choice of the word "discretion" was an unfortunate one. It is quite apparent that each of the three conditions also involved agency "discretion" even though they did not deprive the order of finality. *Whether* any act or document required of the applicant complied with agency regulations or the order itself unquestionably lay in the discretion of the agency to determine.

holder on the completion of landfill operations; and, (2) the agency could be relied upon to enforce this aspect of its order and the relevant regulations. *Browning–Ferris, supra,* at 125–28. Stated another way, the condition did not deprive the order of finality because the Commissioners' determination, made at the close of the contested-case proceeding, was reached *after* the opposing parties had been afforded a hearing and left no remaining issues for adjudication as to what the required elevation *should be;* and, insofar as the opposing parties' interests were exposed to any risk by the permit holder's submitting a nonconforming plan to the agency, they were adequately protected by the presumption that the agency would enforce both its order and its regulations bearing on the plan in controversy. "If compliance is determined to be lacking, the agency has the power to revoke [the permit]." *Browning–Ferris, supra,* at 128. *Cf., Schwartz, supra,* § 5.5.

■ 5. *The attribute of finality may be precluded if necessary to enforce a governing statute apart from APTRA.* Administrative agencies exist to administer statutes that, in turn, govern their exercise of the powers entrusted to them by the Legislature. While APTRA contains many procedural requirements applicable to administrative agencies, the other, constitutive, substantive statutes also contain provisions that govern agency actions in a variety of ways. In several decisions, the courts have enforced these provisions in terms of "finality" for purposes of judicial review.

In *Mahon v. Vandygriff,* 578 S.W.2d 144 (Tex.Civ.App.1979, writ ref'd n.r.e.), the attribute of finality was denied an agency order on the ground that a statute administered by the agency provided that an order of the kind in dispute (approving the merger of two thrift institutions) would become final 10 days after delivery unless a thrift institution in the vicinity requested, within that time, a public hearing on the question of the merger. The court held that the agency order could not, by force of this statute, become "final" until after any pro-tests had been determined or withdrawn. *Mahon, supra,* at 147.

In *Red Arrow Freight Lines v. American Fidelity & Casualty Co.,* 225 S.W.2d 240 (Tex.Civ.App.1949, no writ), the governing statute contained a provision that required official action to be taken by the three commissioners who composed the Board of Insurance Commissioners; and, it required that "[t]he Board shall ... operate as a whole, and a majority vote of the members shall be necessary for official action." In another provision, the statute authorized suits for judicial review to be taken from decisions made by the Board itself. In *Red Arrow,* the court held that there was no final order susceptible of judicial review, under that statute, when the order was based on the decision of only one of the three commissioners to cancel a policy endorsement. The rationale for this holding was that a single Commissioner's decision "was not final or binding on anyone" under the statute which required the concurrence of at least two commissioners for board action. (This holding may also be viewed, of course, as an application of the "ripeness" doctrine and its requirement of an order that is concrete, adverse, and susceptible of immediate enforcement.) *See also Allen v. Crane,* 257 S.W.2d 357 (Tex.Civ.App.1953, writ ref'd n.r.e.) (agency order not final where it omitted to state whether police officer was dismissed, under statute that required such orders to state whether the officer was dismissed); *Flores v. Fort Bend Central Appraisal Dist.,* 720 S.W.2d 243 (Tex.App.1986, no writ) (order amounts to final order where it adjudicates taxpayer's protest and governing statute gives right of judicial review with respect to an "order ... determining a protest....").

## WHETHER THE ORDER IN DISPUTE IS A FINAL ORDER

■ From the foregoing observations, we turn to the merits of the present appeal. The district court based its judgment on a holding that the Commission's order is not a final order for purposes of judicial review under APTRA § 19(a), (b) because of the contingency stated therein which would al-

low Browning–Ferris to give some type or kind of financial assurance other than a bond in the designated sums, if the company so elected. We believe the district court was correct in its holding because the order falls within the fifth category named above: the contingency precludes the attribute of finality because it is contrary to a governing statute outside the provisions of APTRA.

Article 4477–7, § 4(e)(5), as it existed at the time pertinent to the present case, provided as follows:

> *Before a permit is issued,* ... the state agency to which the application is submitted *may require the permittee to execute* a bond or give other financial assurance conditioned on the permittee's satisfactorily operating and closing the solid waste facility.... Financial requirements established by the state agency shall at minimum be consistent with the federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, 42 U.S. C.A., 6901 et seq., as amended.

(emphasis added). While the first sentence in the quotation indicates that the agency may or may not insist upon a financial-assurance requirement, it also indicates that *when* the choice is made to require such assurance the bond must be *executed* and any other type or kind of financial assurance *given before* the permit is issued and not afterwards. This statute is binding on the agency, of course. Moreover, the second sentence in the quotation mandates that Commission requirements be consistent with the parallel federal requirements to which the provision refers. *See* 42 U.S. C.A., § 6901 *et seq.* (West 1976 and Supp. 1987). Section 6924 and Environmental Protection Agency regulations promulgated thereunder make financial assurance mandatory in permits authorizing the disposal of *hazardous* waste such as that involved in the present case. 40 C.F.R. § 264.141 *et seq.* (1986); *see also Lipsey v. Texas Dept. of Health, supra,* at 69 n. 4.

Article 4477–7, § 4(e)(5) thus indicates that it is insufficient in cases like the present for the agency merely to fix only the *amount* of financial assurance to be supplied by the permittee in the future.[7] That statute requires, rather, that the bond be *executed* or the alternate form of assurance be *given before* any permit is issued. This requirement presupposes that *both* the amount and form are fixed before any permit is issued. Our interpretation of the statute is buttressed by the Commission's own interpretation of the statutory provisions it administers.

We refer to art. 4477–7, § 4(c) and the Texas Water Code, §§ 26.011 and 27.019. These establish standards for the owners and operators of hazardous-waste facilities and adopt the mandatory requirements for financial assurance found in the federal regulations, requiring that they be applied in the agency's decision whether to grant a permit under art. 4477–7. *See* 31 Tex.Admin.Code, §§ 335.451–.452 (Nov. 1, 1986). The regulations require that applications for such permits include a statement of *"the manner* in which financial responsibility will be *attained* [sic]." 31 Tex.Admin. Code § 341.160(a)(3) (emphasis added). Finally, an application for a Class I injection well, such as that authorized by the order in dispute in the present appeal, *must* contain and the Commission *must* consider before issuing the permit, "a certificate that the applicant *has assured* ... the resources necessary to close, plug, or abandon the well as required." 31 Tex.Admin. Code §§ 353.12(3) and 341.160(a)(1).

From all of the foregoing, we infer a legislative and agency intent consistent with what art. 4477–7, § 4(e)(5) requires on its face: the execution of a bond or the giving of some alternate type or kind of security before the permit is issued. To enforce this statutory requirement, we hold the order in dispute is not a final order for it does not meet the requirement.

Accordingly, we affirm the judgment below insofar as it dismisses the cause; however, we vacate that judgment with respect

---

**7.** The Texas Water Code contains provisions that require the applicant to make a *showing* of financial responsibility. Tex.Water Code Ann. §§ 27.051(a)(4) and § 27.073 (Supp.1987).

to its remand of the cause to the Commission and with respect to the determinations it purports to make concerning the merits of the suit for judicial review. By reason of the dismissal ordered by the district court, and affirmed here, the cause remains pending in the Commission.