TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00148-CV






GTE Southwest Incorporated, Appellant



v.



Public Utility Commission of Texas; GE Capital Rescom;


and MultiTechnology Services, L.P., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 96-09155, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING 







 GTE Southwest Incorporated ("GTE") sued the Public Utility Commission for
judicial review of a final order issued by the Commission in a contested case. Capital Rescom 
and Multi-Technology Services, L.P. ("MTS") intervened in the suit to defend the order. (1) GTE
appeals now from a trial-court judgment that affirms the order. We will reverse the order and the
trial-court judgment, and remand the controversy to the Commission. 


THE CONTROVERSY


 GTE installed and owns the cables and equipment necessary to supply local-exchange telephone service to five large apartment complexes in League City, Dallas, and Irving. 
By agreement with the owners of the apartment complexes, GTE installed its cables up to each
apartment building, that being the mutually agreed "demarcation point" where GTE's cables
would connect to the owner's wiring and equipment.

 Rescom and MTS are in the business of providing "shared tenant services" to such
apartment buildings and other large, multi-unit premises. Shared-tenant services include climate-control and video transmissions in addition to local-exchange and long-distance voice and data
transmission services. Rescom and MTS proposed to GTE that it "collapse" its multiple
demarcation points (one at each building in each of the five complexes) into a single demarcation
point at each complex, located as near as practicable to the property line of the complex. See 47
C.F.R. § 68.3 (1996). Rescom and MTS would then purchase GTE's installed cable and
equipment lying between the buildings of the complex and the new, single demarcation points, or
they would pay a rental or fee for their use of that segment of GTE's property and equipment. (2) 
GTE agreed to the proposal at one apartment complex, and sold its cable and equipment lying on
the "owner's side" of the new, single demarcation point located at the property line of that
complex. Negotiations were unsuccessful respecting the five apartment complexes presently in
controversy. GTE offered, however, to provide an additional demarcation point at the property
line of each of those complexes--a demarcation point from which Rescom and MTS could install
their own cable network to buildings within each of the five apartment complexes. Rescom and
MTS declined GTE's offer on the ground that their installation of an additional cable network
within the five complexes would be unnecessary, inefficient, disruptive, and too expensive.

 Acting as agents for the owners of the apartment complexes, Rescom and MTS
complained to the Commission that GTE had violated its tariff and GTE's "internal guidelines"
by refusing to "collapse" its multiple demarcation points into a single such point; and they
complained that GTE had applied its demarcation practices unreasonably and in an anti-competitive manner. After a contested-case hearing, the Commission issued a final order
adjudicating the case. In its order, the Commission concluded that GTE's "untariffed practice"
regarding demarcation points at multi-unit premises contravened the reasonableness and non-discrimination requirements of certain federal (3) and state (4) regulations.


 The Commission therefore directed in its final order that GTE file in another
Commission proceeding a proposed revision of its tariff pertaining to shared-tenant services,
requiring that the revised tariff "include a reasonable and non-discriminatory practice addressing
the relocation of multiple demarcation points to a single point of demarcation on multi-unit
premises." In addition, the Commission required that the revised tariff include "a reasonable and
non-discriminatory practice with respect to (1) the permitted use of cable and other facilities on
the . . . owner's side of the single demarcation point after multiple points are collapsed and (2)
the appropriate compensation for such use of cable and other facilities (e.g., lease or purchase)."

 The order thus requires GTE to revise its tariff to include therein reasonable
provisions under which GTE will collapse its multiple demarcation points into a single
demarcation point at multi-unit premises; and the revised tariff must allow the owner of the
premises to lease, purchase, or otherwise obtain the use of GTE's cables and facilities, on the
"owner's side" of the new, single demarcation point, for an "appropriate compensation." The
emphasized language of the order gives rise to the first issue on appeal--whether the Commission
possessed the statutory power to issue such an order.


DISCUSSION AND HOLDINGS


 In its first assignment of error, GTE complains that the Commission acted without
statutory authority in requiring that GTE revise its tariff to allow for the surrender of its property
for use by the property owners. We sustain the assignment of error. See Tex. Gov't Code Ann.
§ 2001.174(2)(B) (West 1999) (reviewing court shall reverse or remand case for further
proceedings if substantial rights of complaining party prejudiced because agency decision "in
excess of agency's statutory authority").

 The Takings Clause of the Fifth Amendment to the Constitution of the United States
provides that "private property [shall not] be taken for public use without just compensation." 
The clause applies to state-government action through the Due Process Clause of the Fourteenth
Amendment to the Constitution. See Chicago Burlington & Quincy R.R. v. Chicago, 166 U.S.
226, 234-41 (1897).

 The Takings Clause consists of several elements, any one of which may be the
subject of litigation:  (1) the action complained of must be that of the government; (2) the action
must amount to a taking; (3) the thing taken must be "private property," that is to say it must be
one of the rights included in the owner's "bundle" of rights in property; and (4) and the taking
must be for a "public" use. See Matthew D. Zinn, Ultra Vires Takings, 97 Mich. L. Rev. 245,
248-49 (1998). It is undisputed that GTE owns the property in question. We need refer in the
present case to the second element only--whether the Commission order amounted to a taking of
GTE's property--before we consider whether the order was ultra vires.

 Government may supervise and control private property quite extensively, in the
public interest, without effectuating thereby a taking of the property. See generally Yee v. City
of Escondido, 503 U.S. 519 (1992); Mayhew v. Town of Sunnyvale, 964 S.W.2d 922 (Tex. 1998);
Annotation: Supreme Court's Views as to What Constitutes "Taking" of Private Property for
Public Use Without Compensation, 89 L. Ed. 2d 977 (1997). Nevertheless, government action
can go "too far" so that it amounts to a taking of private property. This occurs, for example,
when government (1) physically takes the property by compelling the property owner to surrender
his right to exclude others from physical use of the property, See Loretto v. Teleprompter
Manhattan CATV Corp., 458 U.S. 419, 426 (1982); (2) deprives the owner of all "economically
beneficial or productive use" of his property so that the government action is tantamount to a
physical taking. See Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015 (1992); or
(3) regulates property to such an extent that the reviewing court concludes that the regulation is
tantamount to a physical taking based upon the court's "essentially ad hoc, factual inquiry"
concerning the "character" of the governmental action, its economic impact on the property
owner, and its interference with "distinct investment-backed expectations." See Penn Cent.
Transp. Co. v. City of New York, 438 U.S. 104, 124 (1978). We need not inquire as to categories
two and three. We conclude the Commission's order amounts to a physical or per se taking of
GTE's cables and facilities by requiring that GTE surrender its right to exclude others from
physical use of its properties. See Loretto, 456 U.S. at 426 (statute prohibiting owner of rental
property from interfering with installation of cable-television facilities on her property); Bell Atl.
Tel. Cos. v. F.C.C., 24 F.3d 1441, 1446 (D.C. Cir. 1994) (F.C.C. order compelling public utility
to make its facilities available for use by others for reasonable compensation); Gulf Power Co. v.
United States, 998 F. Supp. 1386, 1395 (N.D. Fla. 1998) (statute requiring public utility to
provide others nondiscriminatory access to utility's poles, ducts, conduits, and rights-of-way); cf.
F.C.C. v. Florida Power Corp., 480 U.S. 245, 253-54 (1987) (compelled acquiescence lies at
"heart of the concept of occupation" and "[t]he line which separates [Florida Power] from Loretto
is the unambiguous distinction between a commercial lessee," occupying property with owner's
consent, "and an interloper with a governmental license."). We turn then to whether the
Commission possessed the statutory power to issue an order taking GTE's property in the sense
and on the terms indicated above.

 It is axiomatic that the Commission has no inherent power, but only such powers
as are delegated to it by the legislature in clear and express statutory language, together with any
implied power that may be necessary for the Commission to perform a function or duty that the
legislature has required of the agency in express terms. See Key W. Life Ins. Co. v. State Bd. of
Ins., 350 S.W.2d 839, 848 (Tex. 1961); Coastal States Prod. Co. v. Pate, 309 S.W.2d 828, 831
(Tex. 1958); Sexton v. Mt. Olivet Cem. Ass'n, 720 S.W.2d 129, 137 (Tex. App.--Austin 1986,
writ ref'd n.r.e.).

 Appellees have referred us to no statute that expressly authorizes the Commission
to compel a regulated utility to allow others to physically occupy property that the utility has
devoted to public use, and no statute that expressly requires that the agency perform a duty or
function that necessitates such a power. We should say, in this connection, that the issue is not
whether the Commission possesses a general power to take private property, but whether the
particular action claimed to be a taking in this case is authorized by statute. See Zinn, supra, at
246.

 Appellees point instead to statutes that give the Commission general and broadly
stated powers to regulate and supervise public utilities and to perform quite general duties and
functions. (5) These delegated powers and duties are obvious and admitted but they do not expressly
confer upon the Commission a power to compel a regulated utility to surrender its property for
physical occupation by others. See Bell Atl. Tel. Co., 24 F.3d at 1446 (statutory power of F.C.C.
to order "physical connections," while of broad scope, "does not supply a clear warrant to grant
third parties a license to physical occupation of" utility's property.).

 May the power claimed by the Commission be implied on the ground of necessity
from the general powers and duties relied upon by the agency--the power to secure equal
opportunity for all telecommunication utilities in a competitive marketplace and the agency's duty
to carry out the legislative policy of promoting a diversity of providers and interconnectivity while
encouraging a fully competitive marketplace in the telecommunications field? We may not make
such an implication unless these grants of regulatory authority will themselves be defeated absent
an attendant authority to require a public utility to submit to physical occupation of its property
by others. See Western Union Tel. Co. v. Pennsylvania R.R., 120 F. 362 (C.C. W.D. Pa.), aff'd,
123 F. 33 (3d Cir. 1903), aff'd, 195 U.S. 540 (1904). The Commission does not contend that is
the case. The Commission insists instead that its order does not constitute a taking at all. 
Moreover, familiar rules of statutory construction reject the implication. Statutory grants of power
to administrative agencies must be construed narrowly when they are claimed to authorize
governmental interference with established or traditional property rights. See 3 Sutherland
Statutory Construction, § 65.02 at 312 (1992). This is particularly true when the power claimed
to be implied necessarily raises, as it does here, substantial constitutional questions regarding just
compensation and public use. See Rust v. Sullivan, 500 U.S. 173, 190-91 (1991).

 The Commission contends that GTE's complaint of a taking is "premature" because
the agency order merely requires that GTE revise its tariff. We construe the contention to be an
invocation of the "ripeness" doctrine. The Commission obviously intended that its order be a final
order adjudicating the case now before us, and the Commission did not challenge the trial court's
subject-matter jurisdiction on the ground that the order was not final. The Commission does not
suggest why the taking issue is not presently fit for judicial review, nor why GTE must suffer the
interim oppression of a tariff-revision proceeding of the kind required by the Commission's final
order. We reject the contention. See Browning-Ferris, Inc. v. Brazoria County, 742 S.W.2d 43,
48-49 (Tex. App.--Austin 1987, writ ref'd).

 The Commission appears to contend that its final order does not constitute a taking
in the Loretto sense because the order also directs that GTE revise its tariff to provide for the
recovery of "appropriate compensation"; and, if we understand correctly the Commission's
position, it purports to distinguish Loretto on that basis. We should point out that the statute
considered by the court in Loretto expressly provided for an agency calculation and award of just
compensation. There is thus no such distinction. And, if the Commission lacks the statutory
power to take a utility's property, there is of course no reason for the payment of compensation. 
Further, no statute administered by the Commission delegates to the agency a power to measure,
calculate, and award just compensation for a taking or instructs the agency how to proceed in such
a case. This statutory silence indicates, if nothing else does, that the legislature never intended
the Commission to have a power to take a utility's property in the course of the agency's exercise
of its extensive powers of regulation and supervision of a utility's property. Cf. Gulf Power Co.,
998 F. Supp. at 1395-98 (holding constitutional federal statute conferring upon F.C.C. express
power to require electric-power utility to make its properties available to cable company, and
express power to determine just and reasonable rates therefor). We reject the Commission's
argument. (6)

 Appellees contend finally that the Commission's order amounts not to a taking in
the Loretto sense, but only to permissible regulation under the "essentially ad hoc factual
inquiries" required by the Penn Central decision. See Penn Cent., 438 U.S. at 123-24. We
disagree. We have pointed out above the distinction between a per se or physical taking under
Loretto--a government-compelled deprivation of a property owner's right to exclude others from
the physical occupation of his property--and other forms of taking short of actual physical
appropriation. See Loretto, 458 U.S. at 427-28. Because we find here a taking in the Loretto
sense, we need not inquire whether there is a taking in the Penn Central sense.

 In two assignments of error, GTE contends the Commission erroneously determined
that F.C.C. rules and precedents authorized the agency to force GTE to turn over its cables to
others, and that such rules and precedents, properly interpreted, did not so provide and preempt
any state rules and statutes under which the Commission acted to the contrary. We need not
discuss these contentions because of our holding that the Commission's order constituted an ultra
vires taking per se under Loretto. Any ICC regulation and precedents must yield to the Fifth
Amendment as interpreted in Loretto.

 In a fourth assignment of error, GTE contends the Commission erred in concluding
that GTE's conduct in the matter of demarcation points was unreasonable and discriminatory. We
agree with GTE's contention that it cannot be charged with discrimination or unreasonableness
merely because it refuses to surrender to others, by agreement, the use or occupation of its
property. The record indicates, however, that the issues of discrimination and unreasonable
conduct perhaps involved other factors pertaining to GTE's demarcation-point practices--factors
that the Commission may wish to reconsider in light of our holding that the agency was powerless
to remedy any unreasonable conduct or discrimination by compelling GTE to acquiesce in the
physical occupation of its property by others. To afford the Commission an opportunity to
reconsider, we will remand the cause to the agency.

 We reverse the Commission order and the trial-court judgment, and remand the
controversy to the Commission for further proceedings not inconsistent with our opinion.



 

 John E. Powers, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Powers*

Reversed and Remanded

Filed: July 15, 1999

Publish




















* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1.   In our discussion hereafter, we will, where appropriate, refer collectively to the
Commission, Rescom, and Multi-Technology Services, L.P., as "appellees."
2. GTE appears to have no regular policy or practice of selling or allowing others to use
its installed cables, and the company's tariff on file at the Commission makes no provision in that
regard beyond requiring that any demarcation point be located by agreement with the property
owner and that it be consistent with "Part 68 of the FCC Rules and Regulations." As noted in
footnote 2, infra, these require that the demarcation point be located near the property line or near
where the cable enters a multiple-unit building or buildings. GTE's installation at the five
complexes was consistent with the first location; the new demarcation proposed by Rescom and
MTS would have been consistent with the second authorized location.
3. The federal regulation provides that a telephone company "may establish a reasonable
and nondiscriminatory practice of placing the demarcation point" at either of two places: the
nearest practicable point to where the company's wiring crosses a property line; or, where the
wiring enters a multi-unit building or buildings. See 47 C.F.R. § 68.3(b)(2) (1996).
4. The state requirements were contained in the Public Utility Regulatory Act of 1995. See
Tex. Rev. Civ. Stat. Ann. art. 1446-o ("PURA 1995"). The Act has been repealed and recodified
without substantial change. See Tex. Util. Code Ann. Title 2 (West 1998) ("PURA 1997"); see
also Act of May 8, 1997, 75th Leg., R.S., ch. 166, § 1, 1997 Tex. Gen. Laws 713, 713-1018. 
PURA 1995 prohibited a utility's "making or granting any unreasonable preference or advantage
to any corporation or person within any classification," or subjecting such corporation or person
to "any unreasonable prejudice or disadvantage." PURA 1995, § 3.215. PURA 1995 also
provided that a public utility "may not discriminate against any person or corporation that sells
or leases equipment or performs services in competition with the public utility," and may not
engage "in any other practice that tends to restrict or impair competition." PURA 1995, § 3.217. 
These provisions are now found in PURA 1997 sections 55.005 and 55.006.


 It appears to be undisputed that GTE, on the one hand, and Rescom and MTS, on the other
hand, compete in the shared-tenant services market. It also appears to be undisputed that GTE and
the owners of the five complexes--the principals represented by Rescom and MTS--are not in
competition in that market.
5. The Commission refers to its "general power to regulate and supervise the business of
each public utility . . . and to do anything specifically designated or implied by this title that is
necessary and convenient to the exercise of that power and jurisdiction," PURA 1997, § 14.001;
the agency's duty to "promote diversity of telecommunications providers and interconnectivity"
and to "encourage a fully competitive telecommunications marketplace,"Id. § 51.001; and its duty
to "provide equal opportunity to each telecommunications utility in a competitive marketplace,"
Id. § 52.001.
6. Although the Commission's final order directs GTE to file a tariff providing for an
"appropriate" compensation to be obtained from the apartment complex owners, or presumably
others acting under such owners, GTE would still be entitled to a determination of whether the
amount approved by the Commission as "appropriate" amounted to the "just compensation"
required by the Fifth Amendment.



and Remanded

Filed: July 15, 1999

Publish




















* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1.   In our discussion hereafter, we will, where appropriate, refer collectively to the
Commission, Rescom, and Multi-Technology Services, L.P., as "appellees."
2. GTE appears to have no regular policy or practice of selling or allowing others to use
its installed cables, and the company's tariff on file at the Commission makes no provision in that
regard beyond requiring that any demarcation point be located by agreement with the property
owner and that it be consistent with "Part 68 of the FCC Rules and Regulations." As noted in
footnote 2, infra, these require that the demarcation point be located near the property line or near
where the cable enters a multiple-unit building or buildings. GTE's installation at the five
complexes was consistent with the first location; the new demarcation proposed by Rescom and
MTS would have been consistent with the second authorized location.
3. The federal regulation provides that a telephone company "may establish a reasonable
and nondiscriminatory practice of placing the demarcation point" at either of two places: the
nearest practicable point to where the company's wiring crosses a property line; or, where the
wiring enters a multi-unit building or buildings. See 47 C.F.R. § 68.3(b)(2) (1996).
4. The state requirements were contained in the Public Utility Regulatory Act of 1995. See
Tex. Rev. Civ. Stat. Ann. art. 1446-o ("PURA 1995"). The Act has been repealed and recodified
without substantial change. See Tex. Util. Code Ann. Title 2 (West 1998) ("PURA 1997"); see
also Act of May 8, 1997, 75th Leg., R.S., ch. 166, § 1, 1997 Tex. Gen. Laws 713, 713-1018. 
PURA 1995 prohibited a utility's "making or granting any unreasonable preference or advantage
to any corporation or person within any classification," or subjecting such corporation or person
to "any unreasonable prejudice or disadvantage." PURA 1995, § 3.215. PURA 1995 also
provided that a public utility "may not discriminate against any person or corporation that sells
or leases equipment or performs services in competition with the public utility," and may not
engage "in any other practice that tends to restrict or impair competition." PURA 1995, § 3.217. 
These provisions are now found in PURA 1997 sections 55.005 and 55.006.


 It appears to be undis