SUN OIL COMPANY V. RAILROAD COMMISSION OF TEXAS ET AL

No. A-6410. Decided February 26, 1958.
Rehearing overruled April 2, 1958.
(311 S.W. 2d Series 235)

*Joiner Cartwright, Charles F. Heidrick* and *John H. Bencke-stein,* all of Beaumont for petitioner.

The Court of Civil Appeals erred in reversing the judgment of the trial court and rendering judgment for respondents, because the movement of pipe from points outside of Texas by rail or barge lines to terminals at Houston, Texas, to intransit stor-

age of an authorized motor carrier at Houston, Texas, and from said intransit storage by said motor carrier to Petitioner's well locations in Texas, is interstate commerce. United States v. Erir Ry. Co., 280 S.W. 95, 50 Sup. Ct. 51, 74 L. ed. 187; McFaddin Rice Mill Co. v. Texas & N. O. R. R. Co., 277 S.W. 191, (no writ history); Humble O. & G. Co. v. Texas & Pac. Ry. Co., 155 Texas 483, 289 S.W. 2d 547.

*Will Wilson,* Attorney General, *James N. Ludlum,* and *James W. Wilson,* Assistants Attorney General, for respondents.

The Court of Civil Appeals correctly overruled petitioner's contention that the Railroad Commission is without jurisdiction to determine commerce questions, and correctly concluded that the motor carrier shipments shown in the record are not interstate commerce and are subject to the regulatory powers of the Railroad Commission. Standard Oil Co. v. Federal Trade Commission 340 U.S. 231, 95 L. Ed. 239, 71 Sup. Ct. 240; Atlantic C. L. R. Co. v. Standard Oil Co. 275 U.S. 257; 72 L. Ed. 270, 48 Sup. Ct. 107; Galveston Truck Line Corp. v. State, 123 S.W. 2d 797, (error ref. Cert. den.).

MR. JUSTICE GARWOOD delivered the opinion of the Court.

This suit by our petitioner, Sun Oil Company, attacking an order of the respondent-defendant Railroad Commission, which purports to subject certain truck movements of Sun's tubular goods between Texas points to intrastate rates, presents questions as to (a) the character of the order as appealable vel non, and (b) its validity.

The trial court, sitting without a jury, struck down the order. The Austin Court of Civil Appeals reversed and upheld it. 302 S.W. 2d 191. Our own holding is that the order is not appealable and that the suit should be accordingly dismissed.

The relevant portion of the appellate statute (Sec. 20 of Art. 911b, Vernon's Texas Civ. Stats.) is copied in the footnote.[1] While its peculiarly broad terms would, literally speaking, permit of an appeal from anything whatever that the Commission might do or not do, the petitioner-plaintiff rests on them only so

---

1.—"If any motor carrier or other party at interest be dissatisfied with any decision, rate, charge, rule, order, act, or regulation adopted by the Commission, such dissatisfied person, association, corporation or party after failing to get relief from the Commission may file a petition setting forth the particular objection to such decision, rate, charge, rule, order, act or regulations, or to either or all of them in the District Court of Travis County, Texas, against said Commission as defendant."

far as to say that they imply a rule of liberal construction in favor of appeals. And, although we are cited to no very helpful cases interpreting the language in question, the latter is undoubtedly not intended to be free of all limitation. Sproles Motor Freight Lines v. Smith, Texas Civ. App. 130 S.W. 2d 1087, wr. of er. refused.

In view of our holding it will be unnecessary to detail the facts concerning the merits of the case, that is, the validity of the order. For a complete statement reference is made to the opinion of the Court of Civil Appeals, supra. Suffice it to say that the tubular goods in question were purchased from outside the state by the petitioner-plaintiff in anticipation of its needs for particular wells in the state for a given period and were shipped into the state, where they were unloaded by a specialized motor carrier under contract with the petitioner-plaintiff and kept by the carrier for the account of the petitioner-plaintiff in a warehouse or storage area of the carrier, whence they were taken from time to time by the carrier and delivered to the wells at the direction of the petitioner-plaintiff. Evidently the system resulted in there being in storage at any given time a quite substantial amount of the goods, no particular piece or item being marked for any particular well, although eventually every piece would move out to one well or another, the motor carrier charging for its services rates based on an interstate tariff lower than the intrastate rates corresponding to a similar service.

This practice coming to the attention of the Comimssion, the latter, on or about March 31st, 1955, without notice or hearing, issued its General Order No. 99, which may be said to be part of the order under attack and is copied in the footnote.[2] There-

2.—"On March 31, 1955, the Railroad Commission of Texas, took up for consideration the matter of practices certain motor carriers are engaged in, who are subject to the jurisdiction of the Railroad Commission of Texas.

"The Commission finds from its own investigation that certain motor carriers were hauling pipe and tubular goods in intrastate commerce on interstate rates, all of which is in violation of tariffs as prescribed by the Railroad Commission of Texas on such commodities.

"The Commission Further Finds that pipe and tubular goods shipped into Texas via barge, boat, trucks,or railroad, when reaching its destination as indicated on the bill of lading and having come to rest after an interstate movement, if it is placed in bulk storage, storage and transit yards or warehouse awaiting further shipment, if, when and where needed, transportation out of this storage to a point in Texas, the route being wholly within the State of Texas, is in *intrastate* commerce. Accordingly, it is

"Ordered by the Railroad Commission of Texas that such shipments shall move on rates as prescribed by tariffs issued by the Railroad Commission of Texas."

after, upon application of sundry specialized motor carriers for (in effect) a clarification or elaboration of General Order No. 99 as applied to particular situations, the Commission, after notice "to all specialized motor carriers * * *" (but not to the petitioner-plaintiff or other shippers) held a hearing and some time thereafter issued its so-called "Findings of Fact * * * in Connection with General Order No. 99 to Determine Jurisdiction of the Railroad Commission of Texas," which is also copied in the footnote.[3] As will be noted, the order purports to subject ject the above described traffic of the plaintiff-petitioner and other named shippers to the jurisdiction of the Commission with consequent increase in rates, although said shippers were not parties to the hearing.

However, in due time thereafter, the petitioner-plaintiff entered the proceedings to the extent of filing exceptions to the foregoing findings which were overruled with the notation "that all the questions of law and fact raised in the above exceptions and motions have been previously determined by the Commission, in entering its findings of fact dated November 14, 1955 * * *." The instant suit followed.

---

3.—                                                        Austin, Texas
                                                    November 14, 1955

"On March 31, 1955, the Railroad Commission of Texas, in regular conference, issued, as prescribed by law, General Order No. 99.

"The Oil Field Haulers Association of Texas on May 11, 1955, filed a petition with the Railroad Commission of Texas requesting the Commission to set such order down for a hearing to determine the jurisdiction of the Railroad Commission of Texas.

"On August 16-17-18, 1955, pursuant to statutory notice, a hearing was held at which time evidence was presented by the Chief Inspector of the Railroad Commission of Texas on shipments covered by General Order No. 99.

"From the evidence, as presented by the Chief Inspector, covering shipments made by the Gulf Oil Corporation, the Commission finds that interstate shipments tendered Texas carriers by such company bore definite characteristics of interstate shipments, and it is the opinion of the Railroad Commission of Texas that it has no authority to regulate the rates on such shipments. Furthermore, evidence presented by the Chief Inspector of the Railroad Commission of Texas covering shipments tendered by the National Supply Company, Humble Oil and Refining Company, Mid-Continent Supply Company, Bethlehem Supply Company, Sun Oil Company, Magnolia Petroleum Company, The Texas Company and Oilwell Supply Company, indicate that the shippers through devious methods have attempted to clothe their shipments in the characteristics of interstate to secure the cheap rate, and the carriers, through the use of an in transit tariff on file with the I.C.C., have accepted these shipments without full explanation as to their characteristics. All of which indicates a possible subterfuge to evade the intrastate application of rates as set forth in Tariff 6-C as prescribed by the Railroad Commission of Texas for intrastate shipments.

"Therefore, it is the opinion of the Railroad Commission of Texas that the above-mentioned shippers' traffic as presented in said hearing definitely bore the characteristics of intrastate shipments and the Railroad Commission of Texas is well within its jurisdiction to regulate same, and General Order No. 99 is hereby reaffirmed."

The Sproles Motor Freight Lines case, supra, stands for the proposition that for an administrative order to be judicially reviewable, it must be "final," that is to say, not a mere intermediate ruling or step which does not terminate the proceeding in which it occurs. See also United States v. Atlanta, B. and C. R. Co., 282 U.S. 522, 51 Sup. Ct. 237, 75 L. Ed. 513; in which an order in a corporate reorganization proceeding, reducing a certain item as included by the corporation in its balance sheet, was held to be nonreviewable, since it was a mere step in the reorganization process.

However, the instant order, although clearly foreshadowing future action of the Commission in the event its pronouncements go unheeded by Sun and the other shippers named in the order, seems yet to be quite "final" so far as the particular proceeding goes. The proceeding, regular or irregular, was one of investigation and declaration of the status of certain traffic. Both the investigation and declaration have been made, and no further proceedings will *necessarily* follow. If the order be held not to be reviewable, it must be on grounds other than lack of "finality," unless we are to use the word in a rather broad sense.

Such other grounds, however difficult of definition, have been held in sundry decisions to exist and to prevent judicial review. In United States v. Los Angeles & S. L. R. Co., 273 U.S. 299, 47 Sup. Ct. 413, 71 L. Ed. 651, the court, denying review of an order valuing the properties of a railroad for purposes of future rate making, used this language:

"The so-called order here complained of is one which does not command the carrier to do, or to refrain from doing, any thing; which does not grant or withhold any authority, privilege or license; which does not extend or abridge any power or facility; which does not subject the carrier to any liability, civil or criminal; which does not change the carrier's existing or future status or condition; which does not determine any right or obligation. This so-called order is merely the formal record of conclusions reached after a study of data collected in the course of extensive research conducted by the Commission, through its employees."

In Federal Power Commission v. Hope Natural Gas Co., 320 U. S. 591, 64 Sup. Ct. 281, 88 L. Ed. 333, various local gas-distributing companies and others sought reductions of the rates charged them by the defendant company, a new and lower rate being accordingly ordered. One of the parties to the proceeding

procured an additional finding to the effect that the existing rates, which had been collected under a guarantee of refund if excessive, were in fact unlawful. The Commission admittedly having no power to award restitution for overcharges, it was held that the last mentioned finding, as distinguished from that establishing rates for the future, was not reviewable, since it "does not of itself adversely affect complaint but only affects his rights adversely on the contingency of future administrative action."

This holding seems in point with the instant case, in which traffic under conditions prevailing at the time of the order and only possibly to prevail thereafter is declared subject to intrastate rates but will have to be the subject matter of additional proceedings before any liability, civil or criminal, on the part of the petitioner, Sun Oil Company, or the other named shippers will accrue. In other words, the latter are in no different position by reason of the order than they were before. Proceeding as they have been, and assuming the view of the Commission to be correct as to the intrastate character of the traffic, they could have been moved against by the Commission even without any preceding declaratory order such as that before us. And assuming they will be proceeded against hereafter, they will be as free to contend the traffic in question to be interstate as if the order were never made. The only difference the order makes is that they now have good reason to believe that they will be proceeded against, if they continue to follow the same shipping system and to pay the interstate rate. While the policy of such declaratory orders appears harsh in subjecting the shippers named to the burden of filing ineffectual suits, such as the present, in order to be sure that their rights of defense in the probable future proceedings are not waived, the harshness is substantially mitigated by the foreknowledge of the Commission's purposes which the order conveys.

It is, indeed, somewhat difficult to distinguish the order now before us from that held reviewable (at the behest of both parties) in Frozen Food Express v. United States, 351 U.S. 40, 76 Sup. Ct. 569, 100 L. Ed. 910, the latter being a declaration of general application by the Interstate Commerce Commission that certain agricultural products were "non-exempt" from rate regulation. However, admittedly, orders which constitute rules or rate making are subject to review, and in our view the order in the cited case partake substantially of both, whereas that in the instant case partakes little of either. It is not rule making because not of general application, but rather a mere "ruling"

directed at particular parties. For the same reason it is not rate making.

The judgments of both courts below are reversed, and the cause is dismissed.

Opinion delivered February 26, 1958.

Rehearing overruled April 2, 1958.