**In the Interest of A.M., a Minor Child.**

No. 04–97–01022–CV.

Court of Appeals of Texas, San Antonio.

July 15, 1998.

Joel Hailey, San Antonio, for Appellant.

R. Emmett Harris, Harris & Fogle, Uvalde, Frank E. Gonzalez, San Antonio, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF and ANGELINI, JJ.

## OPINION

HARDBERGER, Chief Justice.

### NATURE OF THE CASE

This is an appeal from orders on several motions arising from a custody dispute—an order modifying a prior custody/possession modification order, an order disqualifying appellant's attorney, and an order assessing costs and ad litem fees against appellant. Appellant, Katherine Deniz Hailey (Deniz), also claims that the trial court erroneously signed a final judgment outside its plenary power. We reverse and render the modification and disqualification, affirm the assessment and division of ad litem fees, and reverse for further factfinding and segregation of ad litem and attorney fees.

### FACTS AND PROCEDURAL BACKGROUND

Deniz and her former husband, Eric Craig Marley (Marley), have two daughters, Melonie, 18, and Anita, 16.[1] About ten years ago, according to testimony, a custody dispute over the girls began between Deniz and Marley. The girls have been the center of, and participants in, an ugly disagreement between their parents ever since—for most of their lives.

In 1996, an Order of Modification was entered in the court of continuing jurisdiction. This order granted Deniz's motion to modify custody, making the parents joint managing conservators of the girls and allowing Deniz possession during the fall semester of each school year, as well as giving her other periods of visitation throughout the year. However, the parents were unable to make this order work, and, in August 1996, two months after the order was signed, Deniz filed a Motion for Enforcement, naming four specific instances in which Marley had violated the

order. In the motion, Deniz requested that the children's father be jailed and, upon release, placed on five years probation for the violations. Marley then filed a motion to disqualify attorney Joel Hailey, Deniz's husband, from representing Deniz.

The first hearing on the motion was held in April 1997. Opening statements addressed only Deniz's motion for enforcement. Deniz called six witnesses. However, in the middle of her own testimony, the trial judge interrupted the proceedings and ordered the parties to sit down and work something out that would be agreeable to everyone, especially the girls. Based on the results of that meeting, the judge held the Motion to Enforce in abeyance and issued temporary orders that modified the original Order of Modification.

On May 22, Judge Sherrill, Marley, Marley's attorney, and the children's attorney ad litem, Emmett Harris, met for a scheduled hearing on one of Deniz's motions in the case. The Haileys had received notice of the hearing at the wrong address and did not appear Because the Haileys were not present, the judge held the hearing in abeyance, but took testimony from a social worker who testified that she had received a claim, which she believed to be well-founded, that Deniz was emotionally abusing the girls. The judge then suspended Deniz's visitation privileges pending a report from a psychologist on the allegation.

On October 21, Marley filed a First Amended Answer to Movant's Motion for Enforcement, generally denying all allegations and claiming (1) that the original Modification Order was ambiguous; (2) that he had complied with the order; (3) that he could not force his "grown" children to see their mother; (4) that the mother was acting in ways not in the best interest of the children; and (5) that the Haileys were pursing a "scorched earth policy" against him. In his prayer, Marley requested that he be awarded attorneys fees and that the court sanction Joel Hailey.

---

1. Melonie turned eighteen during the pendency of the trial below and is no longer a subject of    this lawsuit.

On October 23, the hearing, which now concerned only Anita, resumed. Deniz offered more testimony on the Motion to Enforce. However, the trial judge again interrupted the evidence, this time making rulings from the bench. His rulings included:

1. Leaving possession with Marley and ordering visitation with Deniz "at the option of the minor child and at such times and places as she should be agreeable to."

2. Holding Marley in contempt for the four alleged violations and fining him $1 per violation;

3. Denying a motion by the girls' maternal grandmother to intervene and to obtain partial custody.

4. Awarding ad litem fees, to be shared equally by the parties, to Harris.

5. Assessing unpaid costs against Deniz.

6. Granting Marley's motion to disqualify Joel as Deniz's attorney.

On November 20, the judge signed a final judgment, which mirrored the bench orders. Deniz requested additional findings of fact and conclusions of law. On January 7, the trial judge signed what is captioned "Final Judgment," but what appears to be his response to the requests for findings and conclusions.

Deniz brings fifty-five points of error, revolving around four central issues: the modification of the possession order, Joel's disqualification, assessment of costs and fees, and the January 7 judgment.

## JURISDICTION

■ Appellate courts do not have jurisdiction to review contempt proceedings on ordinary appeal. Instead, the remedy from a finding of contempt is a habeas proceeding. Courts, however, will consider rulings made simultaneous to a contempt order that do not arise from the contempt action. *See, e.g., Martin v. Martin,* 519 S.W.2d 900 (Tex.Civ. App.—Houston [1st Dist.] 1975, no writ); *Grace v. McCrary,* 390 S.W.2d 397 (Tex.Civ. App.—Waco 1965, writ dism'd w.o.j.) *Seber v. Glass,* 258 S.W.2d 122 (Tex.Civ.App.—Fort Worth 1953, no writ).

There is one notable exception. In a case nearly exactly on point, the El Paso court of appeals held that it had no jurisdiction to declare void a change to a custody order, made during a contempt proceeding and in the absence of a motion to modify. *See Smith v. Holder,* 756 S.W.2d 9, 10–11 (Tex. App.—El Paso 1988, no writ). The court noted that other courts have declared such modifications void for lack of pleadings, but stated that it would not hear the case: "We see no sound reason to allow a contemnor to pick and choose until he or she finds a way to file a direct appeal rather than follow the habeas corpus route." *Id.* at 11.

Even if correctly decided, this case is not applicable here. In *Holder,* the contemnor appealed the extraneous modification order. Here, the appeal is brought by the parties who sought the contempt order. Because this appeal was not brought by the contemnor, and because the appeal complains of errors that do not arise from the contempt order, this court has jurisdiction to hear the appeal.

## MODIFICATION

■ Deniz raises thirty-three points of error regarding the trial court's order that she be allowed to visit Anita only at the girl's discretion. Deniz's fundamental complaint is that the order was not based on pleadings or on legally sufficient evidence. *See Oil Field Haulers Ass'n v. Railroad Comm'n,* 381 S.W.2d 183, 191 (Tex.1964). We agree.

A party seeking modification of an order affecting the parent/child relationship may file a motion in district court. TEX. FAM. CODE ANN. §§ 156.001, 156.002 (Vernon 1996). The opposing party must receive notice of the suit. *Id.* at § 156.003. The Texas Rules of Civil Procedure apply to the filing of a suit for modification. *See* TEX. FAM.CODE ANN. § 156.004 (Vernon 1996). The Rules of Civil Procedure require that a judgment comport with the original pleadings. *See* TEX. R. CIV. P. 301. Those rules also acknowledge that an issue may be tried by the consent of the parties. TEX.R. CIV. P. 67.

Several courts have held that a trial judge does not have the authority, in a contempt proceeding, to alter the terms of an original order affecting the parent/child relationship.

See *In the Interest of Vasquez,* 666 S.W.2d 649, 651 (Tex.App.—Corpus Christi 1984, no writ) (motion to modify is sole method for seeking change in conservator or in modifying the terms and conditions of conservatorship); *Ex parte Karr,* 663 S.W.2d 534, 539 (Tex.App.—Amarillo 1983, no writ) (absent pleadings and notice *and evidence* showing material change, trial court may not modify in contempt proceeding); *Martin,* 523 S.W.2d at 253 (Family Code procedure, requiring motion alleging material change was not followed *and* no evidence offered, so modification was invalid); *Seber,* 258 S.W.2d at 124 (contempt proceeding is not an "independent" cause of action). The Corpus Christi court of appeals, has been unanimous that the *only* way to get a possession/custody order modified is by filing a motion. *See, e.g., S.A.B.S. v. H.B.,* 767 S.W.2d 860, 861 (Tex.App.—Corpus Christi 1989, no writ); *Gawlik v. Gawlik,* 707 S.W.2d 256, 259 (Tex. App.—Corpus Christi 1986, no writ); *Vasquez,* 666 S.W.2d at 651. However, at least one court has held that issues may be tried by consent in a contempt proceeding. *See Ex parte Boyle,* 545 S.W.2d 25, 28 (Tex.Civ. App.—Houston [1st Dist.] 1976, no writ) (attorney's fees unpleaded, but tried by consent).

Here, arguably, there was *evidence* that the modified order was unworkable.[2] *See* Tex. Fam.Code Ann. art. 156.301 (Vernon 1996) (order may be modified if unworkable or inappropriate). Marley pleaded in his untimely—but unobjected to—answer that his

daughters resisted seeing their mother. Attorneys for both sides elicited evidence on Marley's ability to control the girls and on the girls' busy schedules. A letter from the girls to their mother, introduced into evidence by Deniz, indicates that the teenagers resented being treated like small children and told whom they should see and when.[3] It would be possible to argue that the issue of workability was tried by consent. There is evidence to support the trial judge's implicit and explicit judgment that the order was unworkable and that Anita's needs and desires had been overlooked in what, by all appearances, was a battle between her parents that had little, if anything, to do with her welfare.

However, under these facts, it would be unfair to Deniz, and a misuse of the rules of procedure, to apply trial-by-consent principles. In contempt proceedings of this nature, which will inevitably raise the issue of whether the original possession order is workable, the simple elicitation of evidence of unworkability cannot suffice to support a judgment that amounts to an almost total reversal of the possession order. Surely Deniz did not expect that the admission of testimony regarding workability, all of which went to the issues surrounding enforcement of the order, would lead to her losing court-ordered access to her daughter. Deniz did agree, at Judge Sherrill's prompting, to try to reach an agreement on visitation with her ex-husband and her daughters. But she never consented—explicitly or implicitly—to liti-

---

**2.** This is the only arguably litigated ground for modification. While there was evidence of emotional abuse by Deniz, heard in an ex parte hearing at which neither Deniz nor her counsel were present, the trial judge specifically recited in his findings of fact and conclusions of law that he did not consider these allegations in making his visitation determination.

**3.** The trial judge noted in his additional findings of fact and conclusions of law that both girls had filed a written request to reside with their father. In addition, the trial court stated that both girls had expressed, in a written letter and in person, that:

    (a) [the trial judge who issued the modification order], their mother, and her lawyer will not listen to them;

    (b) their "best interests" are not being considered;

    (c) they felt that their mother abandoned them for about five years when they were very young;

    (d) their mother's attorney, her husband, makes it very difficult or almost impossible to visit with their mother;

    (e) they do desire to visit with their mother;

    (f) visitation should be commenced on a short time basis in a familiar place or places without their mother's attorney-husband being present and gradually increased as they begin to get acquainted with their mother;

    (g) neither their mother and/or her husband recognize or have any understanding of their emotional needs and/or maturity level, and;

    (h) they have been in litigation all their lives

gate the original custody order in a contempt proceeding she brought against her former husband. When the new arrangement failed, she had every right to expect that her motion to enforce *the original agreement* would be heard. She was not put on notice—by citation, pleadings, or evidence directed at modification—that she might lose rights under the very orders that she was seeking to enforce. *See Peralta v. Heights Medical Ctr.,* 485 U.S. 80, 86–87, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988) (lack of notice is deprivation of due process right to have hearing on the merits). She had not finished putting on her side of the case when the trial judge interrupted the proceedings with his bench ruling. Marley never made out a case, as a party seeking affirmative relief, for modification.

■ Because of the broad range of issues that are relevant in a contempt proceeding of this nature, the only proper way to seek modification is through a motion that will put the adverse party on notice of what is at stake. We reverse that portion of the trial court's judgment that modifies the previous possession order.

## JOEL'S DISQUALIFICATION

■ In *points of error thirty-four through forty,* Deniz argues that the trial court abused its discretion in disqualifying Joel from ever again acting as her attorney in proceedings involving the children. We agree.

The stated grounds for Marley's Motion to Disqualify were that Joel, as Deniz's husband, had "become personally involved in this case, and [had] become the antagonist in the matters presently before the Court, as well as previously heard." In addition, Marley claimed that Joel could "be expected to be called as a witness in these proceedings and, through his pleadings, [had] already attempted to testify." Thus, two grounds for disqualification were presented: *improper tactics* and that the advocate might be called as a witness.

The trial judge heard minimal testimony on the motion to disqualify. He indicated a couple of times that he felt Hailey should be disqualified. In particular, he was concerned about an ex parte communication sent to the court by facsimile transmission prior to the hearing on the contempt motion. The sender of that fax accused Marley of sexually molesting her when she was a teenager, before his daughters were born. The trial judge expressed concern that Joel had somehow been involved in having the fax sent. However, the woman who sent the fax testified that Joel had not been involved, and Joel was not called to testify.

The matter of disqualification came up again while Marley was resisting admission of the evidence about the prior sexual abuse. In his argument, Marley's counsel said, "Additionally, Judge, I think that the Court must be quite aware of the Maximillian (sic) tactics of Mr. Hailey in the representation of his wife, and because of...." The trial judge interrupted: "I will say under the circumstances that I'm going to order the removal or the disqualification of Mr. Hailey in this particular thing...." This order apparently was based on the charge of improper trial tactics. The judge allowed Joel to remain at the counsel table.

When asked directly if he would ever call Joel as a fact witness, Marley's attorney would make no commitment but suggested that it was a possibility.

The judgment recites the following:

The Court finds and determines that Joel Hailey, attorney for the Movant, has on occasion been an impediment and hindrance to the development of a normal and healthy relationship by and between the minor child and their mother, Katherine Deniz Hailey.... [F]urther, if additional proceedings are ever conducted, ordered and/or become necessary in the cause said, [sic] Joel Haley [sic] would be a "fact witness" at least for the Respondent and minor children.

In the requested Additional Findings of Fact, the trial judge found that Joel had interfered in the girls' relationship with their mother and that, during the proceedings, he never "displaced [sic] or showed any compassion, feeling, understanding, and comprehension or [took] into account or even consid-

er[ed] the feelings, emotions and desires of Petitioner's daughters."

■■ "Disqualification is a severe remedy" and must not be used as a trial tactic. *Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 656 (Tex.1990) (orig.proceeding). A movant for disqualification bears the burden of establishing with specificity a violation of one or more of the disciplinary rules. *Id.* Allegations of violations or evidence showing a possible future violation will not be sufficient. *Id.* The disciplinary rules establish minimum standards of conduct and, while not controlling in disqualification decisions, have been viewed as guidelines articulating relevant considerations as to the merit of disqualification motions. *Id.*

To the extent that the trial judge's determination to disqualify Joel was based on a violation of the Texas Rules of Professional Conduct 3.08, it must be reversed. That rule prohibits an attorney from representing a client if he knows or believes he may be a witness "necessary to establish an essential fact on behalf of the lawyer's client" or if he believes he will be compelled to furnish testimony that will be *substantially adverse* to his client. TEX.R. PROF. CONDUCT 3.08, State Bar Rules, TEX. GOV'T CODE ANN. Tit. 2, Subtitle G App., art. 10, § 9. The comments to this rule suggest that it is not well-suited as a standard for disqualification. *Id.* at comment 9. It is, however, used as guidance, in the absence of "countervailing considerations" as to why the rules should not serve as standards for disqualification. *Spears,* 797 S.W.2d at 656.

■■ Under Rule 3.08, the moving party must present evidence that the testimony of the lawyer is "necessary" and that it goes to an "essential fact" of the nonmovant's case. *May v. Crofts,* 868 S.W.2d 397, 399 (Tex.App.—Texarkana 1993, no writ). Disqualification is not appropriate under this rule when opposing counsel merely announces his intention to call the attorney as a fact witness; there must be a genuine need for the attorney's testimony that is material to the opponent's client. *McClure Ent. v. Burnett,* 735 S.W.2d 309, 311 (Tex.App.—Dallas 1987, no writ). The movant must also demonstrate prejudice. *Ayres v. Canales,*

790 S.W.2d 554, 558 (Tex.1990). Further, if the attorney notifies opposing counsel of his dual role and advises him that disqualification would work a substantial hardship on his client, he may serve as counsel. TEX.R. PROF. CONDUCT 3.08(a)(5); *Ayres,* 790 S.W.2d at 557. Joel so notified Marley's counsel.

There was no basis for disqualifying Joel under Rule 3.08. Marley's counsel could not evince a positive intent to call him as a witness. *See Spears,* 797 S.W.2d at 658 (affirming decision not to disqualify, in part, on absence of state's unqualified intent to call attorney as witness). Moreover, the final decision to disqualify Joel came near the end of the proceedings and was extended to all future proceedings. There was *no* showing that future proceedings are likely or what those proceedings would entail. While it is possible that Joel might have to testify about the ex parte communication or about his involvement in visitation issues, we are not there yet. At this point, it is simply impossible to know if Joel's testimony is "necessary," because we cannot know what "essential facts" may be raised in future proceedings.

■■ To the extent that the trial court's decision was based on Joel's improper tactics and involvement in the case, the call is closer. There was evidence that Joel had interfered in his wife's relationship with the girls. There was testimony that, while Deniz was willing to be conciliatory in working around her daughters' schedules, Joel repeatedly sent letters that undermined those attempts and insisted upon strict compliance with the court order. There were accusations that Joel, not Deniz, was the impediment in normalizing family relationships.

However, we cannot say that the record supports disqualification. The trial court's order was more a sanction for past behavior than it was a disqualification from present and future litigation. There is nothing in the disciplinary rules that says that an attorney has to show compassion or sympathy, even toward his own stepdaughters. Nor does the evidence show that Joel was doing anything more than insisting on strict compliance with the custody decree. While this insistence

may have worked against harmonious relations, it does not warrant disqualification. We therefore sustain this point of error.

### ASSESSMENT OF COSTS AND AD LITEM FEES

In points of error forty-one through fifty-four, Deniz complains that the trial judge erred by assessing all court costs and half of the ad litem fees against her. We remand this portion of the case for further factfinding.

### *Court Costs*

■ Deniz complains that court costs should not have been assessed against her, as she was the prevailing party. *See* TEX.R. CIV. P. 131 (costs to be assessed against losing party); TEX.R. CIV. P. 141 (if costs are assessed against winning party, court must state good cause on the record). The trial court's determination is viewed under an abuse of discretion standard. *D.R. v. J.A.R.,* 894 S.W.2d 91, 95 (Tex.App.—Fort Worth 1995, writ denied).

Texas Rule of Civil Procedure 308a governs enforcement actions for suits affecting the parent-child relationship. That rule states that, in an enforcement action, no fee shall be charged or paid to an attorney, except by order of the court. TEX.R. CIV. P. 308a. In the event that attorney's fees are ordered, the rule states, "[T]he fee shall be adjudged against the party who violated the court's order." *Id.* The Family Code states that, in enforcement proceedings on child support payments, the court "shall" order respondent to pay the movant's reasonable attorney's fees, unless good cause is stated in the court's findings. TEX. FAM.CODE ANN. § 157.167 (Vernon 1996). These provisions support Deniz's contention. The trial court must assess attorneys fees on the enforcement motion against Marley or show good cause why he did not do so.

■ Rule 308a speaks only to enforcement proceedings. *See also Dabney v. Dabney,* 548 S.W.2d 98, 100 (Tex.Civ.App.—Eastland 1977, no writ) (stating award of attorneys fees is mandatory only for portion of fees expended for enforcing decree). We note that several courts have held that, in non-enforcement proceedings under the Family Code, the trial court need not state good cause for awarding fees to the non-prevailing party, *D.R.,* 894 S.W.2d at 96; *Gross v. Gross,* 808 S.W.2d 215, 221 (Tex. App.—Houston [14th Dist.] 1991, no writ); *Goheen v. Koester,* 794 S.W.2d 830, 836 (Tex. App.—Dallas 1990, writ denied); *Billeaud v. Billeaud,* 697 S.W.2d 652, 655 (Tex.App.—Houston [1st Dist.] 1985, no writ). We agree that, because in family law cases involving children, the best interests of the children are paramount, it may not always be appropriate to award costs and fees to the prevailing party. Therefore, we reverse this portion of the case and remand for a determination of what reasonable fees were expended to enforce the motion. In the absence of good cause to do otherwise, the trial court must assess the fees against Marley. On remand, the trial court may assess the remainder of fees and costs in the case as the court, in its discretion, deems reasonable and necessary. *See D.R.,* 894 S.W.2d at 96 (listing findings that, in that case, supported award of fees).

### *Ad Litem Fees*

■ Deniz argues that, because Emmett Harris, the girls' ad litem, did not request fees in his pleadings and because no evidence was offered on ad litem fees, the trial judge abused his discretion in ordering her to pay half of the $1,500 he awarded to Harris. We disagree, but remand the issue for a determination of whether the fees awarded were reasonable.

■ This court has held that, absent a mandatory statute, the court's jurisdiction to render judgment for attorney's fees is invoked by pleadings. *Wolters v. White,* 659 S.W.2d 885, 888 (Tex.App.—San Antonio 1983, writ dism'd w.o.j.); *see also Gross,* 808 S.W.2d at 222. There is a mandatory statute for awarding ad litem fees. *See* TEX. FAM. CODE ANN. § 107.015 (Vernon 1996) (attorney ad litem is entitled to a "reasonable" fee in the amount set by the court, to be paid by the parents of the child). There was no objection to the trial court's expressed intent to award ad litem fees. Any error was waived. We will not hold the lack of plead-

ings against the ad litem. Nor do we find that the trial court abused its discretion in allocating the ad litem fees between the parties. The family code permits the trial court to split ad litem fees between the parents; thus the court acted with reference to guiding legal principles. *See* TEX. FAM.CODE ANN. art. 107.015(b) (Vernon 1996).

As for evidence on the issue, the trial judge asked the ad litem, twice, how many hours he had worked and how much he usually charged per hour. On neither occasion was the ad litem sworn, however. Nor did the ad litem ever offer evidence on reasonable ad litem fees in similar circumstances. We therefore affirm the award and division of ad litem fees but remand this portion of the case for a determination of reasonableness. *See Goheen,* 794 S.W.2d at 836–37 (remanding so that attorneys fees could be properly allocated between husband and wife, where evidence did not show proper allocation).

### *Constitutionality*

■ The trial court's order that ad litem fees be paid stated that failure to pay would give rise to a motion for contempt, together with any relief that the court should find proper. Deniz argues that this is unconstitutional because attorneys fees orders are not enforceable by contempt. *See* Tex. Const. art. I, § 18 (prohibiting imprisonment for debt). This issue is not ripe for appeal.[4]

■ A complaint is ripe when the controversy is real as opposed to abstract, hypothetical, or remote. *Browning–Ferris, Inc. v. Brazoria Co.,* 742 S.W.2d 43, 49 (Tex. App.—Austin 1987, no writ). In *Sun Oil Co. v. Railroad Comm. of Texas,* 158 Tex. 292, 311 S.W.2d 235 (1958), the supreme court held that a claim against the railroad commission was not ripe because, even though the commission had issued an order that shipments that fell within its jurisdiction would be subject to higher rates, and appel-

lants were expressly the subject of that order, the only consequence of the order was to give appellants "good reason to believe that they *will* be proceeded against." *Sun Oil Co.,* 311 S.W.2d at 237.

We believe that Deniz's claim regarding the constitutionality of using contempt to enforce an order to pay ad litem fees is similarly unripe. No contempt order has been issued. Deniz is "in no different position by reason of the order" than she was before. *See Sun Oil,* 311 S.W.2d at 238. The cases cited by Deniz, *Hightower, Karr, and Kimsey,* were habeas proceedings, brought because a relator had been imprisoned for contempt. Deniz has not been imprisoned. In light of our holding here that, by statute, reasonable ad litem fees must be paid and may be shared by Deniz and Marley equally, the trial court may not be forced to enforce his order. There can be no disagreement that statutorily mandated representation for children brought into the courts because their parents cannot agree is in the children's best interest.

Even if the judge should have to enforce his order, we note that he did not limit his enforcement options to contempt, and we cannot speculate as to which means he will use. Should he choose to initiate contempt proceedings, Deniz may renew her complaint in a habeas proceeding.

### *The January 7 Judgment*

■ In her fifty-fifth point of error, Deniz complains that the trial court committed reversible error when it signed a final judgment on January 7, almost two weeks beyond its plenary power, which expired on December 22.

■ Although the January 7 document is captioned "Final Judgment," it is nothing more than the trial judge's response to Deniz's request for additional findings and conclusions. "A trial court may file additional findings even after it loses plenary power

---

4. We take no position on the merits of the argument. We note that there is some disagreement among appellate courts on this issue. *Compare Ex parte Hightower,* 877 S.W.2d 17, 21 (Tex. App.—Dallas, writ dism'd w.o.j.) (stating that collecting ad litem fees in contempt actions would

be unconstitutional), *with Ex parte Kimsey,* 915 S.W.2d 523, 526 n. 1 (Tex.App.—El Paso 1995, no writ) (stating ad litem fees, which are assessed for the safety and welfare of children, may be collected, as child support, via contempt proceedings).

to affect the judgment." *Morrison v. Morrison,* 713 S.W.2d 377, 380–81 (Tex.App.—Dallas 1986, writ dism'd). If the litigant is injured by the trial court's belated filing, in that he may not timely request additional findings, the proper remedy is to ask the appellate court to abate the appeal and order the judge to consider the request for additional findings. *Id.* at 381.

## CONCLUSION

This is a difficult case. The trial court's attempt to look after the needs and concerns of the children is commendable and correct in intent. However, the cornerstones of our judicial system are notice and a fair hearing. *See* Tex. Const. art. I, § 19; *Federal Sign v. Texas Southern Univ.,* 951 S.W.2d 401, 410 (Tex.1997). Deniz was given neither. We therefore reverse the trial court's modification of the possession/access order. In addition, we (1) reverse the portion of the judgment disqualifying Joel; (2) reverse the assessment of costs against Deniz and remand for a determination of what portion of her fees were expended on the motion to enforce and for segregation and assessment of other fees; (3) remand for a determination of reasonable ad litem fees, to be assessed against the parents equally; (4) refuse to consider the contempt complaint for lack of ripeness; and (5) overrule the complaint regarding the January 7 "final judgment."