

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00575-CV

**IN THE INTEREST OF V.M.T.**, a Child

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-CI-13681
Honorable Cathleen M. Stryker, Judge Presiding[1]

Opinion by:  Rebeca C. Martinez, Justice

Sitting:  Karen Angelini, Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  August 15, 2018

REVERSED AND RENDERED

Kim Tarka filed a petition in the underlying lawsuit to adjudicate the parentage of V.M.T., alleging Abram Charles Rabinowitz is V.M.T.'s biological father. The trial court granted summary judgment in favor of Rabinowitz on his affirmative defense of limitations. On appeal, Tarka contends the trial court erred in granting the summary judgment because limitations is governed by the statute of limitations that was in effect either when she filed her petition or when V.M.T. was born. Tarka also contends the trial court erred in denying her motion for summary judgment. We reverse the trial court's judgment and render judgment that Rabinowitz is V.M.T.'s biological father.

---

[1] The Honorable Cathleen M. Stryker signed a final judgment referencing an order granting summary judgment signed prior to a severance. The Honorable Laura Salinas signed the order granting the summary judgment and the agreed order of severance.

**BACKGROUND**

V.M.T. was born on May 24, 2000.  On that date, Tarka and her husband Darryl Wilkinson had filed for divorce, but the divorce was not finalized.  A divorce decree was subsequently entered on June 5, 2000.  The decree stipulated that Wilkinson was not V.M.T.'s father.

Tarka and Wilkinson remarried in 2005.  In 2007, Tarka and Wilkinson submitted an application to the Texas Department of State Health Services Vital Statistics Unit for a new birth certificate for V.M.T.  The application states the form is to be used to add, remove or replace information regarding the father and/or mother listed on the original birth certificate according to an establishment of paternity or a court order.  On the application, Tarka and Wilkinson marked that they were requesting a new birth certificate to be filed as evidenced by "Attached certified copy of the **BIOLOGICAL** parents' marriage license."  Tarka and Wilkinson attached their 2005 marriage license to the application.  Based on the application, an amended birth certificate was issued on April 24, 2007, listing Wilkinson as V.M.T.'s father.

On August 15, 2015, Tarka filed the underlying lawsuit alleging Rabinowitz is V.M.T.'s biological father, which was subsequently confirmed by genetic testing.  Rabinowitz filed an answer asserting limitations and estoppel as affirmative defenses.  Rabinowitz also filed a counterclaim seeking a declaration that he is not V.M.T.'s father.

The parties filed competing motions for summary judgment.  In his motion, Rabinowitz asserted Tarka's lawsuit was barred by limitations.  Rabinowitz also asserted Tarka was equitably estopped from denying Wilkinson is V.M.T.'s biological father based on the application she submitted to amend V.M.T.'s birth certificate.  Tarka responded that her claim was not barred by the limitations statute in effect either at the time she filed her lawsuit or at the time V.M.T. was born. Tarka further responded other versions of the limitations statute do not apply because neither the Texas Supreme Court nor this court has held that any version of the limitations statute

unconstitutionally impairs a vested right. Finally, Tarka responded Rabinowitz did not meet his burden of proving each element of the affirmative defense of equitable estoppel as a matter of law.

In her motion, Tarka asserted Rabinowitz was conclusively proven to be V.M.T.'s father by genetic testing and requested the trial court to adjudicate that Rabinowitz is V.M.T.'s father. Tarka also asserted she conclusively established that her claim was not barred by limitations or equitable estoppel. Finally, Tarka listed the elements of Rabinowitz's equitable estoppel and quasi-estoppel defenses and asserted he could provide no evidence as to any of those elements.

The trial court signed an order granting Rabinowitz's motion as to his limitations defense, denying Rabinowitz's motion as to his estoppel defense, and denying Tarka's motion. Tarka appeals.

### STANDARD OF REVIEW

"We review a trial court's order granting summary judgment de novo." *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017). To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *see also Hansen*, 525 S.W.3d at 681. "A [no evidence] motion for summary judgment must be granted if: (1) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial; and (2) the respondent [fails to produce more than a scintilla of] summary judgment evidence raising a genuine issue of material fact on those elements." *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) ("More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.") (internal quotation omitted). Whether reviewing a traditional or no evidence summary judgment, we consider all the evidence in the light

most favorable to the nonmovant and resolve any doubts in the nonmovant's favor. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). "When faced with competing summary judgment motions where the trial court denied one and granted the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and if the trial court erred, render the judgment the trial court should have rendered." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015).

## LIMITATIONS

Tarka contends the trial court erred in granting summary judgment in favor of Rabinowitz on his limitations defense. Tarka asserts her claim to adjudicate V.M.T.'s parentage was timely filed under either the statute of limitations applicable when her lawsuit was filed in 2015 or the statute of limitations applicable when V.M.T. was born in 2000. Rabinowitz contends he had a vested right to rely on the statute of limitations in effect in 2003 because Tarka's claim was barred by that statute when the statute of limitations was amended in 2011. Because his limitations defense was vested under the 2003 statute, Rabinowitz asserts the application of the 2011 amended statute of limitations would be unconstitutionally retroactive.

### A.      Time Limitations to Adjudicate Parentage of Child Having Presumed Father

The statute in effect from the date V.M.T. was born in 2000 "until June 14, 2001 allowed a mother, a presumed father, or both to bring a suit disputing the presumed father's paternity and attempting to adjudicate an alleged biological father's paternity until the second anniversary of the day the child became an adult, generally age twenty." *In re K.N.P.*, 179 S.W.3d 717, 721 & n.8 (Tex. App.—Fort Worth 2005, pet. denied) (citing Act of May 24, 1983, 68th Leg., R.S., ch. 744, § 1, 1983 Tex. Gen. Laws 4530, 4531, *repealed by* Act of May 25, 2001, 77th Leg., R.S., ch. 821, § 1.01, 2001 Tex. Gen. Laws 1610, 1626). In 2001, the Texas Legislature enacted section 160.607 of the Texas Family Code entitled "Time Limitation: Child Having Presumed Father" as part of

Texas's codification of the Uniform Parentage Act. *See id.* at 721. As enacted in 2001, section 160.607 provided as follows:

> Sec. 160.607. TIME LIMITATION: CHILD HAVING PRESUMED FATHER
>
> (a) Except as otherwise provided by Subsection (b), a proceeding brought by a presumed father, the mother, or another individual to adjudicate the parentage of a child having a presumed father shall be commenced not later than the fourth anniversary of the date of the birth of the child.
>
> (b) A proceeding seeking to disprove the father-child relationship between a child and the child's presumed father may be maintained at any time if the court determines that:
>
> > (1)    the presumed father and the mother of the child did not live together or engage in sexual intercourse with each other during the probable time of conception; and
> >
> > (2)    the presumed father never openly treated the child as his own.

Act of May 25, 2001, 77th Leg., R.S., ch. 821, § 1.01, 2001 Tex. Gen. Laws 1610, 1626. In 2003, subsection (b)(2) was amended to require the court to determine "the presumed father never represented to others that the child was his own." Act of May 28, 2003, 78th Leg., R.S., ch. 1248, § 4, 2003 Tex. Gen. Laws 3537, 3538. Finally, in 2011, subsection (b) was amended to the current version of the statute which reads as follows:

> (b) A proceeding seeking to adjudicate the parentage of a child having a presumed father may be maintained at any time if the court determines that:
>
> > (1)    the presumed father and the mother of the child did not live together or engage in sexual intercourse with each other during the probable time of conception; or
> >
> > (2)    the presumed father was precluded from commencing a proceeding to adjudicate the parentage of the child before the expiration of the time prescribed by Subsection (a) because of the mistaken belief that he was the child's biological father based on misrepresentations that led him to that conclusion.

TEX. FAM. CODE ANN. § 160.607 (West 2014).

## B.    Applicable Time Limitation

When section 160.607(b) was amended in 2011, the Legislature provided that the changes in the law with respect to a proceeding to adjudicate parentage apply "to a proceeding that is commenced on or after the effective date of this Act."  Act of May 20, 2011, 82nd Leg., R.S., ch. 1221, § 11(b), 2011 Tex. Gen. Laws 3256, 3259.  Tarka commenced the underlying proceeding in 2015; therefore, the 2011 amended version of the statute generally would apply to her lawsuit. Because the undisputed evidence established Wilkinson, V.M.T.'s presumed father,[2] and Tarka did not live together or engage in sexual intercourse with each other during the probable time of V.M.T.'s conception, section 160.607(b) allows a proceeding to adjudicate the parentage of V.M.T. to be maintained at any time.  TEX. FAM. CODE ANN. § 160.607(b).

Although acknowledging Tarka's claim would be timely under the current version of section 160.607(b), Rabinowitz asserts the application of the current version of the statute as it was amended in 2011 would be unconstitutionally retroactive as applied to him.  In support of his position, Rabinowitz relies on the broad proposition that "a statute of limitations will not be given retroactive effect if to do so would destroy or impair rights that vested before the effective date of the statute."  *In re K.N.P.*, 179 S.W.3d at 720.  Rabinowitz also relies on the Fort Worth court's decision in *In re S.T.*, 467 S.W.3d 720, 727 (Tex. App.—Fort Worth 2015, no pet.), which held the application of the 2011 version of the statute would impair a biological father's vested right to rely on the 2001 version of the statute which was in effect "when the child was born."  In the

---

[2] Because Wilkinson was married to Tarka when V.M.T. was born, it is undisputed that Wilkinson is V.M.T.'s presumed father.  *See* Act of April 6, 1995, 74th Leg., R.S., ch. 20, 1995 Tex. Gen. Laws 113, 138 (currently codified at TEX. FAM. CODE ANN. § 160.204(a)(1)).  Rabinowitz makes an argument in his brief that Wilkinson became a presumed father for a "second time" when V.M.T.'s birth certificate was amended in 2007, thereby giving rise to a second cause of action governed by a different limitations period.  Because Wilkinson's status as V.M.T.'s presumed father was never rebutted in a judicial proceeding, he never lost his status as V.M.T.'s presumed father.  *See* TEX. FAM. CODE ANN. § 160.102(13).  Therefore, we reject Rabinowitz's argument that Wilkinson could become V.M.T.'s presumed father for a "second time."

instant case, however, Rabinowitz does not seek to rely on the statute in effect when V.M.T. was born because that statute would permit Tarka to assert her claim until V.M.T. turned twenty. More importantly, however, a challenge that a statute violates the prohibition against retroactive laws in article I, section 16 of the Texas Constitution is an as-applied challenge because such a challenge does not contend the statute always operates unconstitutionally but only contends the statute is unconstitutionally retroactive as to the claim being alleged under the particular circumstances presented. *Tenet Hosp. Ltd. v. Rivera*, 445 S.W.3d 698, 702 (Tex. 2014). Therefore, we must consider the specific circumstances presented in each case in examining an as-applied challenge.

**C.      Is the application of the current version of section 167.607 unconstitutionally retroactive as applied to Rabinowitz?**

The Texas Constitution provides that "No … retroactive law … shall be made." TEX. CONST. art. I, § 16. "A retroactive law is one that extends to matters that occurred in the past." *Tenet Hosp. Ltd.*, 445 S.W.3d at 707.

Prior to the Texas Supreme Court's decision in *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126 (Tex. 2010), courts examining whether a statute was unconstitutionally retroactive focused on classifying whether a right or interest was "vested" in order to determine whether it was retroactively diminished or impaired by a change in the law. *See Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 56 (Tex. 2014); *see also Barker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 4-5 (Tex. 1999) (holding change in the law was unconstitutionally retroactive because it divested a defendant of a limitations defense that was vested before the change in the law). In *Robinson*, however, the court concluded, "What constitutes an impairment of vested rights is too much in the eye of the beholder to serve as a test for unconstitutional retroactivity." 335 S.W.3d at 143. In holding a "vested rights" test to be unworkable, the court recognized "the constitutional prohibition against retroactive laws does not insulate every vested right from impairment." *Id*. at

145. Stated differently, "not all retroactive statutes are unconstitutional." *Tenet Hosp. Ltd.*, 445 S.W.3d at 707. As a result, "[n]o bright-line test for unconstitutional retroactivity is possible." *Robinson*, 335 S.W.3d at 145.

In *Robinson*, the court established three factors to be considered in examining whether retroactive laws are constitutional: (1) the nature and strength of the public interest served by the statute; (2) the nature of the prior right impaired by the statute; and (3) the extent of the impairment. 335 S.W.3d at 145; *see also Tenet Hosp. Ltd.*, 445 S.W.3d at 707 (recognizing test); *Union Carbide Corp.*, 438 S.W.3d at 56 (same). "This test acknowledges the heavy presumption against retroactive laws by requiring a compelling public interest to overcome the presumption." *Tenet Hosp. Ltd.*, 445 S.W.3d at 707. "But it also appropriately encompasses the notion that statutes are not to be set aside lightly." *Id.* (internal quotation omitted); *see also Union Carbide Corp.*, 438 S.W.3d at 55 (noting statutes are presumed constitutional and party challenging constitutionality bears burden to demonstrate its unconstitutionality).

Regarding the public interest, "[t]he purpose of the Uniform Parentage Act …, which the Texas Legislature adopted in 2001, *is to protect the child involved in parentage issues*." *In re S.T.*, 467 S.W.3d at 727 (quoting *In re A.D.M.*, No. 13-09-00677-CV, 2011 WL 3366381, at \*12-13 (Tex. App.—Corpus Christi Aug. 4, 2011, pet. denied) (mem. op.)) (emphasis in original). The purpose of the four-year statute of limitations in section 160.607(a) is to protect the family unit and preserve the father-child relationship between the presumed father and the child. *In re S.T.*, 467 S.W.3d at 727-28 (quoting *In re A.D.M.*, 2011 WL 3366381, at \*12); *In re S.C.L.*, 175 S.W.3d 555, 559-60 (Tex. App.—Dallas 2005, no pet.). In this case, however, we must consider the public interest served by the statutory exceptions to the four-year limitations period. In amending section 167.607(b) in 2011, the Texas Legislature intended to provide additional protections to a presumed father who relied on misrepresentations regarding a child's parentage by providing a specific

exception for such misrepresentations and by removing any additional requirement the presumed father was required to prove when he did not live with the child's mother or engage in sexual intercourse with her during the probable time of conception. Thus, the public interest served is to prevent a man from being required to support a child he did not conceive in situations where he was duped into believing he was the child's biological father or when he could prove he could not have been the biological father despite actions that were taken after the child's birth. *See In re S.T.*, 467 S.W.3d at 728 (noting amendment allowed for an exception in cases of fraud by misrepresentation). The amendment also recognized the public interest in ensuring that a biological father is allowed to establish his parentage of a child when the factual circumstances conclusively exclude the presumed father as being the biological father despite actions the presumed father took after the child's birth recognizing the child as his own. In protecting the right to establish the parentage of a biological father under those circumstances, the amendment also benefited the child by ensuring the courts remain open to a claim allowing the child to seek support from his or her biological father. *See* TEX. FAM. CODE ANN. § 153.001(a)(3) (West 2014) (noting public policy of Texas is to encourage parents to share in the rights and duties of raising their child after the parents have separated); *see also Union Carbide Corp.*, 438 S.W.3d at 58 (citing *In re A.V.*, 113 S.W.3d 355 (Tex. 2003) as "declining to declare a statute unconstitutionally retroactive when the Legislature sough to protect children"); *In re A.M.*, 974 S.W.2d 857, 865 (Tex. App.—San Antonio 1998, no pet.) (noting best interests of the children are paramount in family law cases involving children).

Having considered the public interest served by the 2011 amendment to section 167.607(b), we must balance that against the nature of the prior right and the extent to which the statute impairs that right. *See Tenet Hosp. Ltd.*, 445 S.W.3d at 708. "[I]t has long been the law in Texas that the Legislature may repeal a statute and immediately eliminate any right or remedy that the statute

previously granted." *Union Carbide Corp.*, 438 S.W.3d at 59. Thus, in examining the nature of the prior right, we look to the party's "settled expectations." *Id.*; *see also Robinson*, 335 S.W.3d at 145. When V.M.T. was born, Rabinowitz had no settled expectation that any claim to establish his parentage as V.M.T.'s biological father would be barred by limitations because the law allowed such a claim to be brought at any time before V.M.T. turned twenty. Similarly, the record contains no evidence that Rabinowitz followed the amendments to the statute of limitations or believed limitations would bar any claim against him despite the applicable statutory exceptions. In fact, the record contains no evidence that Rabinowitz contemplated such a claim being brought against him. *See Union Carbide Corp.*, 438 S.W.3d at 59 ("We fail to see how the Emmites reasonably could have had settled expectations that the Legislature would not change the requirements for a wrongful death lawsuit based on asbestos-related injury when they have not demonstrated that they were contemplating such a suit before Chapter 90 became effective."). Furthermore, the 2011 amendment did not expand the four-year limitations period for all purposes; it simply expanded the statutory exceptions to the limitations period for a narrow range of cases. *See id.* ("Chapter 90 did not purport to eliminate all wrongful death causes of actions based on asbestos-related injuries. Rather, it was narrowly designed to address the documented crisis.").

The expansion of the statutory exceptions to the four-year limitations period for bringing a claim to adjudicate the parentage of a child having a presumed father "is not the kind of focused, special interest legislative action [the Texas Supreme Court] held unconstitutional in *Robinson*." *Id.* at 60. When V.M.T. was born, Rabinowitz could not have had a reasonable expectation that a claim to adjudicate his parentage as V.M.T.'s biological father would be barred because the limitations provision at that time extended to her twentieth birthday. Furthermore, there is nothing in the record to demonstrate Rabinowitz was contemplating such a claim being brought during a period in which the 2001 or 2003 version of section 160.607 would have applied. Therefore,

having weighed the *Robinson* factors, we hold that "[i]n the context of a constitutional retroactivity challenge to [section 160.607(b)], the impact of [the current statute] on [Rabinowitz's] expectations does not outweigh the compelling public interest it serves." *Id.* As a result, the trial court erred in granting summary judgment in favor of Rabinowitz on limitations grounds.

### EQUITABLE ESTOPPEL

Tarka and Rabinowitz filed competing motions for summary judgment on Rabinowitz's equitable estoppel defense. A defendant moving for summary judgment based on an affirmative defense has the burden to conclusively prove all elements of the affirmative defense as a matter of law such that there is no genuine issue of material fact. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310-11 (Tex. 1984); *Garcia v. State Farm Lloyds*, 514 S.W.3d 257, 264 (Tex. App.—San Antonio 2016, pet. denied). Because Tarka also moved for a no-evidence summary judgment and specifically challenged each element of Rabinowitz's equitable estoppel defense, she would be entitled to summary judgment unless Rabinowitz produced more than a scintilla of summary judgment evidence raising a genuine issue of material fact on those elements *Sudan*, 199 S.W.3d at 291.

"The elements of equitable estoppel are (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 486 (Tex. 2017) (internal quotation omitted). To support his equitable estoppel defense, Rabinowitz points to the evidence that Tarka made a false representation that Wilkinson was V.M.T.'s biological father when she applied to amend V.M.T.'s birth certificate. Equitable estoppel, however, requires a showing of detrimental reliance by the party asserting the defense, in this case by Rabinowitz. *Inimitable Group, L.P. v. Westwood Group*

*Dev. II, Ltd.*, 264 S.W.3d 892, 902 (Tex. App.—Fort Worth 2008, no pet.); *Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765 (Tex. App.—Texarkana 1992, writ denied); *Thate v. Tex. & P. Ry. Co.*, 595 S.W.2d 591, 595-96 (Tex. Civ. App.—Dallas 1980, writ dism'd). Rabinowitz did not, however, produce any evidence to establish that he relied on the representation made in the application to amend V.M.T.'s birth certificate. In fact, the summary judgment evidence establishes Rabinowitz only discovered the representation made in the application to amend V.M.T.'s birth certificate after the underlying lawsuit was filed. Accordingly, because Rabinowitz failed to produce any evidence to show detrimental reliance and the summary judgment evidence conclusively established the absence of detrimental reliance, the trial court erred in denying Tarka's motion as to Rabinowitz's equitable estoppel defense.

### QUASI-ESTOPPEL DEFENSE

Although Rabinowitz refers to both equitable estoppel and quasi-estoppel in his brief, his motion only sought summary judgment on the basis of equitable estoppel. Rabinowitz did refer to quasi-estoppel in his response to Tarka's motion; however, his response would only serve to preclude the trial court from granting summary judgment in favor of Tarka if Rabinowitz raised a fact issue on each element of his affirmative defense. *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 124 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ("A party raising an affirmative defense in opposition to a motion for summary judgment must either (1) present a disputed fact issue on the opposing party's failure to satisfy his own burden of proof or (2) establish at least the existence of a fact issue on each element of his affirmative defense by summary judgment proof."). Rabinowitz's response would not permit the trial court to grant summary judgment in favor of Rabinowitz based on his quasi-estoppel affirmative defense. *See ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 545-46 (Tex. 2017) ("A motion for summary judgment must state the specific grounds entitling the movant to judgment, identifying

or addressing the cause of action or defense and its elements."). Therefore, we examine whether Rabinowitz produced more than a scintilla of summary judgment evidence raising a genuine issue of material fact on the elements of his quasi-estoppel defense. *Sudan*, 199 S.W.3d at 291.

In asserting his quasi-estoppel defense, Rabinowitz again relies on Tarka's false representation that Wilkinson was V.M.T.'s biological father on the application to amend V.M.T.'s birth certificate. Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000); *see also Leyendecker v. Uribe*, No. 04-17-00163-CV, 2018 WL 442724, at *4 (Tex. App.—San Antonio Jan. 17, 2018, pet. denied) (mem. op.). "The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Lopez*, 22 S.W.3d at 864; *Leyendecker*, 2018 WL 442724, at *4. Although quasi-estoppel does not require a showing of detrimental reliance, "Texas courts have recognized that quasi-estoppel requires mutuality of parties and may not be asserted by or against a 'stranger' to the transaction that gave rise to the estoppel." *Leyendecker*, 2018 WL 442724, at *4-5 (internal quotation omitted). Because Rabinowitz was a "stranger" to the transaction in which Tarka obtained the amended birth certificate for V.M.T., he is not entitled to assert quasi-estoppel based on that transaction. Accordingly, the trial court erred in denying Tarka's no-evidence motion as to Rabinowitz's quasi-estoppel defense.

### ADJUDICATION OF V.M.T.'S PARENTAGE

In Tarka's motion, she requested the trial court to adjudicate that Rabinowitz is V.M.T.'s biological father and attached genetic test results that conclusively establish his paternity.

When genetic testing discloses a man has at least a 99 percent probability of paternity of a child and the testing discloses a combined paternity index of at least 100 to 1, the man is rebuttably

identified as the child's father. TEX. FAM. CODE ANN. § 160.505(a) (West 2014). If the man does not present any evidence contradicting the test results, a trial court is compelled to adjudicate the man as the child's father. *Quiroz v. Gray*, 441 S.W.3d 588, 598 (Tex. App.—El Paso 2014, no pet.).

In this case, Tarka presented genetic test results conclusively establishing Rabinowitz "is 99.9999999946% more likely to be the biological father of [V.M.T.] than a random Caucasian man." Because Rabinowitz did not present any evidence contradicting the test results, the trial court erred in denying Tarka's motion.

## CONCLUSION

The trial court's judgment is reversed and judgment is rendered that Rabinowitz is the biological father of V.M.T.[3]

Rebeca C. Martinez, Justice

---

[3] Although Tarka's brief requests a remand for trial on the "remaining issues," she acknowledges in a footnote that all of the other claims remain pending in the original cause number after the issues addressed in this opinion were severed into a separate cause. Because no issues remain pending in the underlying severed cause, a remand is not appropriate.